# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ESTATE OF CARMEN E. CRESPO )
A/K/A CARMEN E. CRESPO- )
MARTINEZ )
ESTATE OF MARCIANO CRESPO- )
GONZALEZ )
ESTATE OF CARMEN M. MARTINEZ- )
CAMACHO )
MIGUEL A. CRESPO-MARTINEZ )
ESTATE OF JAIME L. CRESPO- )
PADILLA )
RAFAEL A. CRESPO-PADILLA )
 )
ESTATE OF VIRGEN M. FLORES- )
SUAREZ )
ESTATE OF LUIS FLORES-VELEZ )
ESTATE OF ESTHER M. SUAREZ- )
HERNANDEZ )
CRUCITA FLORES-SUAREZ )
ESTATE OF JUAN FLORES-SUAREZ )
LUCINA FLORES-SUAREZ )
JOSE L. FLORES-SUAREZ )
HERMES FLORES-SUAREZ )
 )
MARIA DEL CARMEN DIAZ-FLORES )
MAXIMINO DIAZ-HERNANDEZ )
LOURDES G. DIAZ-FLORES )
MAXIMINO DIAZ-FLORES )
ESTATE OF MELBA A. DIAZ-FLORES )
IDA E. DIAZ-FLORES )
MICHAEL DIAZ-FLORES )
 )
ESTATE OF LINA E. GONZALEZ- )
ARIAS )
 )
ESTATE OF BLANCA R. GONZALEZ- )
HERNANDEZ )
ESTATE OF MARIA A. HERNANDEZ- )
JIMENEZ )
NEREIDA GONZALEZ-HERNANDEZ )
JOSE M. GONZALEZ-HERNANDEZ )
ESTATE OF BENJAMIN GONZALEZ- )
HERNANDEZ )

ESTATE OF FLOR M. GONZALEZ-HERNANDEZ )
ESTATE OF GUSTAVO GONZALEZ-HERNANDEZ )
ESTATE OF JAIME GONZALEZ-HERNANDEZ )
ESTATE OF LUIS M. GONZALEZ-HERNANDEZ )
ESTATE OF NOELIA GONZALEZ-HERNANDEZ )
ESTATE OF SAMUEL GONZALEZ-HERNANDEZ )
 )
ESTATE OF EUGENIA LOPEZ-HERNANDEZ )
ESTATE OF HECTOR V. PEREZ-LOPEZ )
 )
ESTATE OF MIGUEL E. MARTINEZ-RIVERA )
LYDIA E. MARTINEZ-VILLANUEVA )
ESTATE OF RAMON E. MARTINEZ-ROSA )
 )
ESTATE OF VASTHI Z. MORALES-RODRIGUEZ )
JOSE M. VEGA-FRANQUI )
DAMARIS E. VEGA-MORALES )
VASTHI N. VEGA-MORALES )
 )
ESTATE OF JOSE M. OTERO-ADORNO )
ESTATE OF MANUEL OTERO-FELICIANO )
FRANCISCO R. OTERO-ADORNO )
BLANCA I. OTERO-ADORNO )
JUAN R. OTERO-ADORNO )
ALICIA OTERO-DIAZ )
ESTATE OF LUIS A. OTERO-DIAZ )
 )
ESTATE OF JUAN PADILLA-ORTIZ )
ESTATE OF PETRA ORTIZ-OCASIO )
VICTOR PADILLA-ORTIZ )
ESTATE OF PEDRO PADILLA-ORTIZ )
ELIZABETH PADILLA-ORTIZ )

2

AIDA PADILLA-ORTIZ                               )
LAURA PADILLA-ORTIZ                              )
SARAH PADILLA-ORTIZ                              )
ZELIDETH PADILLA-ORTIZ                           )
NELSON A. PADILLA-ORTIZ                          )
                                                 )
ESTATE OF CONSORCIA                              )
RODRIGUEZ-ACOSTA                                 )
ISMAEL NEGRON-RODRIGUEZ                          )
ESTATE OF JOAQUIN NEGRON-                        )
RODRIGUEZ                                        )
ANA MARIA NEGRON-RODRIGUEZ                       )
CANDIDA R. NEGRON-RODRIGUEZ                      )
CARMEN A. NEGRON-RODRIGUEZ                       )
FELIPE NEGRON-RODRIGUEZ                          )
OTILIO NEGRON-RODRIGUEZ                          )
DAVID NEGRON-RODRIGUEZ                           )
                                                 )
ESTATE OF JOSE A. RODRIGUEZ-                     )
ZENO                                             )
ESTATE OF ROGELIO RODRIGUEZ-                     )
ROMAN                                            )
ESTATE OF JOAQUINA ZENO-                         )
CENTENO                                          )
HERIBERTO RODRIGUEZ-ZENO                         )
ESTATE OF MARIA M. RODRIGUEZ-                    )
ZENO                                             )
ESTATE OF MERCEDES RODRIGUEZ-                    )
ZENO                                             )
                                                 )
ESTATE OF MERCEDES ALEJANDRO-                    )
GARCIA                                           )
NARCISO TAVALES-GARCIA                           )
ESTATE OF MATILDA TAVALES-                       )
GARCIA                                           )
EDWIN TAVALES-GARCIA                             )
                                                 )
ESTATE OF LUIS CONDE-                            )
MALDONADO                                        )
ESTATE OF JUANITA LOPEZ-                         )
MOLLENO                                          )
ELIEZER CONDE-LOPEZ                              )
                                                 )

3

ESTATE OF JUAN CRUZ-           )
CANDELARIA                     )
ESTATE OF ANTONIA ACEVEDO-     )
VILA                           )
ESTATE OF CARMEN ACEVEDO-      )
VILA                           )
ESTATE OF ANTONIO CRUZ-        )
CANDELARIA                     )
                               )
ERNESTO DELGADO-CRESPO         )
ESTATE OF ERNESTO DELGADO-     )
LINARES                        )
ESTATE OF ISABEL CRESPO-FERRER )
NILSA I. DELGADO-CRESPO        )
CARLOS J. DELGADO-CRESPO       )
                               )
ESTATE OF MANUEL GONZALEZ-     )
RUIZ                           )
ESTATE OF ELBA DELGADO-MORA    )
MINERVA GONZALEZ-DELGADO       )
CARMEN N. GONZALEZ-DELGADO     )
MARITZA GONZALEZ-DELGADO       )
                               )
NAZIRA E. HAWAYEK-FIGUEROA     )
ESTATE OF JOSE ASSED-HAWAYEK   )
ESTATE OF SYLVIA FIGUEROA-     )
RODRIGUEZ                      )
JOSE Y. HAWAYEK-FIGUEROA       )     `
                               )
ESTATE OF PEDRO HERNANDEZ-     )
RODRIGUEZ                      )
ROSA M. HERNANDEZ-RIOS         )
HERIBERTO HERNANDEZ-RIOS       )
                               )
ESTATE OF LUZ E. LUGOS-        )
QUINONES                       )
ROSA E. VAZQUEZ-LUGO           )
ESTATE OF ABIGAIL LUGO-        )
QUINONES                       )
ESTATE OF LYDIA LUGO-QUINONES  )
ESTATE OF WILLIAM LUGO-        )
QUINONES                       )
ESTATE OF NEFTALI LUGO-        )
QUINONES                       )

EVA C. LUGO-QUINONES                          )
                                             )
ESTATE OF LUZ B. MATOS-GARCIA                )
ESTATE OF CARMEN M. MATOS-                    )
GARCIA                                       )
ANA M. SANCHES-MATOS                          )
ESTATE OF CARMEN L. SANCHEZ-                  )
MATOS                                        )
                                             )
ANGEL RIVERA-SANTIAGO                         )
ANGEL L. RIVERA-COTTO                         )
JUAN C. RIVERA-COTTO                          )
ROSA A. RIVERA-COTTO                          )
ESTATE OF HIDELFONSO RIVERA-                  )
SANTIAGO                                     )
ESTATE OF TOMAS A. RIVERA-                    )
SANTIAGO                                     )
ESTATE OF JUAN RIVERA-                        )
SANTIAGO                                     )
ESTATE OF MARCIAL RIVERA-                     )
SANTIAGO                                     )
CARMEN E. RIVERA-SANTIAGO                     )
HIPOLITO RIVERA-SANTIAGO                      )
ANA D. RIVERA-SANTIAGO                        )
CATALINA RIVERA-RIVERA                        )
                                             )
ESTATE OF CLAIRE SMITH-GOLDEN                 )
CAROL GOLDEN                                  )
                                             )
ESTATE OF ANA SARA VEGA-                      )
GONZALEZ                                     )
JOSE ABNER MUNOZ-VEGA                         )
NILDA SOLER-RIVERA                            )
NILDA I. MUNOZ-RIVERA                         )
                                             )
        (Addresses filed under Seal)          )
                                             )
                Plaintiffs,                   )
                                             )
              v.                              )      Case No.  1:22-cv-01514
                                             )
DEMOCRATIC PEOPLE'S REPUBLIC                  )
OF KOREA                                     )
a/k/a North Korea                             )

5

c/o Foreign Minister Ri Son-gwon            )
Ministry of Foreign Affairs                     )
Jungsong-dong, Central District              )
Pyongyang, DPRK,                              )
                                                          )
                      Defendant.                 )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

Plaintiffs, by and through their undersigned counsel, seek judgment against defendant, the Democratic People's Republic of Korea, pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A.

## I.      **INTRODUCTION**

1.      This action is brought by plaintiffs through counsel against the Democratic People's Republic of Korea (hereinafter "North Korea") for orchestrating the May 30, 1972 grenade and machine gun terrorist attack at the Lod Airport near Tel Aviv, Israel.[1]  The attack, known as the Lod Airport massacre, killed twenty-six people and injured eighty more.  It was the largest terrorist attack perpetrated up to that moment in time.  Plaintiffs are thirty-five (35) of the U.S. citizens who were murdered or who suffered physical and/or mental and emotional injuries in the attack; and ninety-six (96) of their immediate family members.  Plaintiffs seek compensatory and punitive damages as provided by 28 U.S.C. §1605A(c).

---

[1] Lod Aiport had its name changed to Ben Gurion International Airport in 1973 after David Ben-Gurion, Israel's first Prime Minister.  It is located 28 miles northwest of Jerusalem and 12 miles southeast of Tel Aviv.

## II.   JURISDICTION AND VENUE AND CHOICE OF LAW

2.     Jurisdiction in this Court arises pursuant to 28 U.S.C. §§ 1605A, 1330(a), 1331, and 1332(a)(2).

3.     Defendant North Korea is subject to suit in the courts of the United States as a sponsor of the terrorist groups, the Japanese Red Army (hereinafter "JRA"), the Popular Front for the Liberation of Palestine (hereinafter "PFLP"), and the Palestine Liberation Organization (hereinafter "PLO"), terrorist organizations pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A(a), and related statutes, including Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j), Section 40 of the Arms Export Control Act (22 U.S.C. § 2780), and Section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371), which designated North Korea as a state sponsor of terrorism.

4.     28 U.S.C. § 1605A provides a federal private right of action against foreign state sponsors of terror for personal injury or death caused by acts of terrorism, and provides for damages, including economic damages, solatium, pain and suffering, and punitive damages. 28 U.S.C. § 1605A(c).

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).  Actions for personal injury, death, and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents fall within the meaning of 28 U.S.C. § 1605A generally.

### III.   PLAINTIFFS

6.     Each of the named plaintiffs in this action, or their estates and personal representatives, were born and have remained, or at the time of their deaths did remain, U.S.

citizens.  All named plaintiffs, or their estates and personal representatives, qualify as claimants in accordance with 28 U.S.C. § 1605A(c). All plaintiffs were either murdered or suffered physical and/or mental and emotional injuries as a result of the May 30, 1972 terrorist attack at Lod Airport. The decedent-plaintiffs and the surviving injured plaintiffs present at the Lod Airport massacre, save for Claire Smith-Golden and Carol Golden, were citizens of Puerto Rico traveling together with family, friends and fellow religious pilgrims on a trip to Israel at the time of the attack. Claire Smith-Golden was a U.S. citizen working as a teacher in Israel, and was waiting in the terminal of Lod Airport for her daughter Carol Golden's flight arrival, at the time of the attack.

7.      Decedent-Plaintiff **Carmen E. Crespo a/k/a Carmen E. Crespo-Martinez**[2] was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

8.      Plaintiff **Miguel A. Crespo-Martinez** is the brother of decedent-Plaintiff Carmen E. Crespo-Martinez. Miguel brings this action individually, as the representative of his sister Carmen's estate, and as the representative of his other late family members' estates.

9.      Plaintiff **Marciano Crespo-Gonzalez**, deceased, was the father of decedent-Plaintiff Carmen E. Crespo-Martinez.  His estate is represented by his son Miguel A. Crespo-Martinez.

10.     Plaintiff **Carmen M. Martinez-Camacho**, deceased, was the mother of decedent-Plaintiff Carmen E. Crespo-Martinez. Her estate is represented by her son Miguel A. Crespo-

_____

[2] For purposes of simplicity, as the first named plaintiff in this suit, Carmen E. Crespo-Martinez's name is being shortened to only include her father's surname, Carmen E. Crespo. However, in Spanish-speaking countries, individuals customarily have two surnames.  The first surname is inherited from the father, and the second surname is the mother's maiden name.  The father's surname is typically written before the mother's surname. Therefore, for clarity we refer to all plaintiffs, save for Claire Smith-Golden and Carol Golden, by both parents' surnames.

Martinez.

11.     Plaintiff **Jaime L. Crespo-Padilla**, deceased, was the half-brother of decedent-Plaintiff Carmen E. Crespo-Martinez.  His estate is represented by his brother Miguel A Crespo-Martinez.

12.     Plaintiff **Rafael A. Crespo-Padilla** is the half-brother of decedent-Plaintiff Carmen E. Crespo-Martinez.

13.     Decedent-Plaintiff **Virgen M. Flores-Suarez** was tortured and murdered in the May 30, 1972 massacre Lod Airport.

14.     Plaintiff **Maria del Carmen Diaz-Flores** was injured in the May 30, 1972 massacre at Lod Airport. She brings this action individually, and as the representative of her late sister's estate.

15.     Plaintiff **Crucita Flores-Suarez** is the sister of decedent-Plaintiff Virgen M. Flores-Suarez, and the mother of surviving injured Plaintiff Maria del Carmen Diaz-Flores. Crucita brings this action individually, as the representative of her sister Virgen's estate, and as the representative of her other late family members' estates.

16.     Plaintiff **Luis Flores-Velez**, deceased, was the father of decedent-plaintiff Virgen M. Flores.  His estate is represented by his daughter Crucita Flores-Suarez.

17.     Plaintiff **Esther M. Suarez-Hernandez**, deceased, was the mother of decedent-Plaintiff Virgen M. Flores-Suarez. Her estate is represented by her daughter Crucita Flores-Suarez.

18.     Plaintiff **Juan Flores-Suarez**, deceased, was the brother of decedent-Plaintiff Virgen M. Flores.  His estate is represented by his sister Crucita Flores-Suarez.

19.     Plaintiff **Lucina Flores-Suarez** is the sister of decedent-Plaintiff Virgen M. Flores-

Suarez.

20.    Plaintiff **Jose L. Flores-Suarez** is the brother of decedent-Plaintiff Virgen M. Flores-Suarez.

21.    Plaintiff **Hermes Flores-Suarez** is the brother of decedent-Plaintiff Virgen M. Flores.

22.    Plaintiff **Maximino Diaz-Hernandez** is the father of surviving injured Plaintiff Maria del Carmen Diaz-Flores.

23.    Plaintiff **Lourdes G. Diaz-Flores** is the sister of surviving injured Plaintiff Maria del Carmen Diaz-Flores.

24.    Plaintiff **Maximino Diaz-Flores** is the brother of surviving injured Plaintiff Maria del Carmen Diaz-Flores.

25.    Plaintiff **Melba A. Diaz-Flores**, deceased, is the sister of surviving injured Plaintiff Maria del Carmen Diaz-Flores.  Her estate is represented by her sister, Maria del Carmen Diaz-Flores.

26.    Plaintiff **Ida E. Diaz-Flores** is the sister of surviving injured Plaintiff Maria del Carmen Diaz-Flores.

27.    Plaintiff **Michael Diaz-Flores** is the brother of surviving injured Plaintiff Maria del Carmen Diaz-Flores.

28.    Decedent-Plaintiff **Lina E. Gonzalez-Arias** was tortured and murdered in the May 30, 1972 massacre at Lod Airport. Her estate is represented by her cousin**,** Sylma E. Lugo-Tufino.

29.    Decedent-Plaintiff **Blanca R. Gonzalez-Hernandez** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

10

30.     Plaintiff **Nereida Gonzalez-Hernandez** is the sister of decedent-Plaintiff Blanca R. Gonzalez-Hernandez. She bring this action individually, as the co-representative of her sister Blanca's estate, and as the co-representative of her other late family members' estates.

31.     Plaintiff **Jose M. Gonzalez-Hernandez** is the brother of decedent-Plaintiff Blanca R. Gonzalez-Hernandez. He brings this action individually, as the co-representative of his sister Blanca's estate, and as the co-representative of his other late family members' estates.

32.     Plaintiff **Maria A. Hernandez-Jimenez**, deceased, was the mother of decedent-Plaintiff Blanca R. Gonzalez-Hernandez.  Her children, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of her estate.

33.     Plaintiff **Benjamin Gonzalez-Hernandez**, deceased, was the brother of decedent-Plaintiff Blanca R. Gonzalez-Hernandez.  His siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of his estate.

34.     Plaintiff **Flor M. Gonzalez-Hernandez**, deceased, was the sister of decedent-Plaintiff Blanca R. Gonzalez-Hernandez. Her siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of her estate.

35.     Plaintiff **Gustavo Gonzalez-Hernandez**, deceased, was the brother of decedent-Plaintiff Blanca R. Gonzalez-Hernandez.  His siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of his estate.

36.     Plaintiff **Jaime Gonzalez-Hernandez**, deceased, was the brother of decedent-Plaintiff Blanca R. Gonzalez-Hernandez.  His siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of his estate.

37.     Plaintiff **Luis M. Gonzalez-Hernandez**, deceased, was the brother of decedent-

Plaintiff Blanca R. Gonzalez-Hernandez.  His siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of his estate.

38.    Plaintiff **Noelia Gonzalez-Hernandez**, deceased, was the sister of decedent-Plaintiff Blanca R. Gonzalez-Hernandez.  Her siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of her estate.

39.    Plaintiff **Samuel Gonzalez-Hernandez**, deceased, was the brother of decedent-Plaintiff Blanca R. Gonzalez-Hernandez.  His siblings, Nereida Gonzalez-Hernandez and Jose M. Gonzalez Hernandez, are the co-representatives of his estate.

40.    Decedent-Plaintiff **Eugenia Lopez-Hernandez** was tortured and murdered in the Lod Airport massacre on May 30, 1972.  Her estate is represented by her grandson, Hector A. Perez.

41.    Plaintiff **Hector V. Perez-Lopez,** deceased, was the son of decedent-Plaintiff Eugenia Lopez-Hernandez. His estate is represented by his son, Hector A. Perez.

42.    Decedent-Plaintiff **Miguel E. Martinez-Rivera** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

43.    Plaintiff **Lydia E. Martinez-Villanueva** was injured in the May 30, 1972 massacre at Lod Airport. She is the wife of decedent-Plaintiff Miguel E. Martinez-Rivera.  Lydia brings this action individually, as the representative of her late husband's estate, and as the representative of her late husband's son's estate.

44.    Plaintiff **Ramon E. Martinez-Rosa**, deceased, was the son of decedent-Plaintiff Miguel E. Martinez-Rivera.  His estate is represented by Miguel's wife Lydia E. Martinez-Villanueva.

45.     Decedent-plaintiff **Vasthi Z. Morales-Rodriguez** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

46.     Plaintiff Reverend **Jose M. Vega-Franqui** was injured in the May 30, 1972 massacre at Lod Airport. He is the husband of decedent-Plaintiff Vasthi Z. Morales-Rodriguez. Reverend Franqui brings this action individually, and as the representative of his late wife's estate.

47.     Plaintiff **Damaris E. Vega-Morales** is the daughter of decedent-Plaintiff Vasthi Z. Morales-Rodriguez and surviving injured Plaintiff Reverend Jose M. Vega-Franqui.

48.     Plaintiff **Vasthi N. Vega-Morales** is the daughter of decedent-Plaintiff Vasthi Z. Morales-Rodriguez and surviving injured Plaintiff Reverend Jose M. Vega-Franqui.

49.     Decedent-Plaintiff **Jose M. Otero-Adorno** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

50.     Plaintiff **Francisco R. Otero-Adorno** is the brother of Jose M. Otero-Adorno. Francisco brings this action individually, as the representative of his brother Jose's estate, and as the representative of his other late family members' estates.

51.     Plaintiff **Manuel Otero-Feliciano**, deceased, was the father of decedent-Plaintiff Jose M. Otero-Adorno.  His estate is represented by his son Francisco R. Otero-Adorno.

52.     Plaintiff **Blanca I. Otero-Adorno** is the sister of decedent-Plaintiff Jose M. Otero-Adorno.

53.     Plaintiff **Juan R. Otero-Adorno** is the brother of decedent-Plaintiff Jose M. Otero-Adorno.

54.     Plaintiff **Alicia Otero-Diaz** is the half-sister of decedent-Plaintiff Jose M. Otero-Adorno.

55.     Plaintiff **Luis A. Otero-Diaz**, deceased, was the half-brother of decedent-Plaintiff Jose M. Otero-Adorno.  His estate is represented by his brother Francisco R. Otero-Adorno.

56.     Decedent-Plaintiff **Juan Padilla-Ortiz** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

57.     Plaintiff **Victor Padilla-Ortiz** is the brother of decedent-Plaintiff Juan Padilla-Ortiz.  Victor Padilla-Ortiz brings this action individually, as the representative of his brother Victor's estate, and as the representative of his other late family members' estates.

58.     Plaintiff **Petra Ortiz-Ocasio**, deceased, was the mother of decedent-Plaintiff Juan Padilla-Ortiz.  Her estate is represented by her son Victor Padilla-Ortiz.

59.     Plaintiff **Pedro Padilla-Ortiz**, deceased, was the brother of decedent-Plaintiff Juan Padilla-Ortiz.  His estate is represented by his brother Victor Padilla-Ortiz.

60.     Plaintiff **Elizabeth Padilla-Ortiz** is the sister of decedent-Plaintiff Juan Padilla-Ortiz.

61.     Plaintiff **Aida Padilla-Ortiz** is the sister of decedent-Plaintiff Juan Padilla-Ortiz.

62.     Plaintiff **Laura Padilla-Ortiz** is the sister of decedent-Plaintiff Juan Padilla-Ortiz.

63.      Plaintiff **Sarah Padilla-Ortiz** is the sister of decedent-Plaintiff Juan Padilla-Ortiz.

64.      Plaintiff **Zelideth Padilla-Ortiz** is the sister of decedent-Plaintiff Juan Padilla-Ortiz.

65.      Plaintiff **Nelson A. Padilla-Ortiz** is the brother of decedent-Plaintiff Juan Padilla-Ortiz.

66.     Decedent-Plaintiff **Consorcia Rodriguez-Acosta** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

14

67.     Plaintiff **Ismael Negron-Rodriguez** is the son of decedent-Plaintiff Consorcia Rodriguez-Acosta.  Ismael brings this action individually, as the representative of his mother Consorcia's estate, and as the representative of his late brother's estate.

68.     Plaintiff **Joaquin Negron-Rodriguez**, deceased, was the son of decedent-Plaintiff Consorcia Rodriguez-Acosta.  His estate is represented by his brother Ismael Negron-Rodriguez.

69.     Plaintiff **Ana Maria Negron-Rodriguez** is the daughter of decedent-Plaintiff Consorcia Rodriguez-Acosta.

70.     Plaintiff **Candida R. Negron-Rodriguez** is the daughter of decedent-Plaintiff Consorcia Rodriguez-Acosta.

71.      Plaintiff **Carmen A. Negron-Rodriguez** is the daughter of decedent-Plaintiff Consorcia Rodriguez-Acosta.

72.     Plaintiff **Felipe Negron-Rodriguez** is the son of decedent-Plaintiff Consorcia Rodriguez-Acosta.

73.     Plaintiff **Otilio Negron-Rodriguez** is the son of decedent-Plaintiff Consorcia Rodriguez-Acosta.

74.     Plaintiff **David Negron-Rodriguez** is the son of decedent-Plaintiff Consorcia Rodriguez-Acosta.

75.     Decedent-Plaintiff **Jose A. Rodriguez-Zeno** was tortured and murdered in the May 30, 1972 massacre at Lod Airport.

76.     Plaintiff **Heriberto Rodriguez-Zeno** is the brother of decedent-Plaintiff Jose A. Rodriguez-Zeno.  Heriberto brings this action individually, as the representative of his brother Jose's estate, and as the representative of his other late family members' estates.

77.     Plaintiff **Rogelio Rodriguez-Roman**, deceased, was the father of decedent-Plaintiff Jose A. Rodriguez-Zeno. His estate is represented by his son Heriberto Rodriguez-Zeno.

78.     Plaintiff **Joaquina Zeno-Centeno**, deceased, was the mother of decedent-Plaintiff Jose A. Rodriguez-Zeno.  Her estate is represented by her son Heriberto Rodriguez-Zeno.

79.     Plaintiff **Maria M. Rodriguez-Zeno**, deceased, was the sister of decedent-Plaintiff Jose A. Rodriguez-Zeno.  Her estate is represented by her brother Heriberto Rodriguez-Zeno.

80.     Plaintiff **Mercedes Rodriguez-Zeno**, deceased, was the sister of decedent-Plaintiff Jose A. Rodriguez-Zeno.  Her estate is represented by her brother Heriberto Rodriguez-Zeno.

81.     Plaintiff **Mercedes Alejandro-Garcia**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

82.     Plaintiff **Narciso Tavales-Garcia** is the son of surviving injured Plaintiff Mercedes Alejandro-Garcia.  Narciso bring this action individually, as the representative of his mother Mercedes' estate, and as the representative of his late sister's estate.

83.     Plaintiff **Matilda Tavales-Garcia**, deceased, was the daughter of surviving injured Plaintiff Mercedes Alejandro-Garcia.  Her estate is represented by her brother Narciso Tavales-Garcia.

84.     Plaintiff **Edwin Tavales-Garcia** is the son of surviving injured Plaintiff Mercedes Alejandro-Garcia.

85.     Plaintiffs **Luis Conde-Maldonado** and **Juanita Lopez-Molleno**, husband and wife, both now deceased, were each injured in the May 30, 1972 massacre at Lod Airport.

86.     Plaintiff **Eliezer Conde-Lopez** is the son of surviving injured Plaintiffs Luis Conde-Maldonado and Juanita Lopez-Molleno.  Eliezer brings this action individually, and as the

16

representative of both of his late parents' estates.

87.     Plaintiffs **Juan Cruz-Candelaria** and **Antonia Acevedo-Vila**, husband and wife, both now deceased, were each injured in the May 30, 1972 massacre at Lod Airport.  Their estates are represented by Antonia's niece, Magaly Soto-Acevedo.

88.      Plaintiff **Carmen Acevedo-Vila**, deceased, was the sister of Antonia Acevedo-Vila. Her estate is represented by her daughter Magaly Soto-Acevedo.

89.     Plaintiff **Antonio Cruz-Candelaria**, deceased, was the brother of Juan Cruz-Candelaria.  His estate is represented by Antonia's niece, Magaly Soto-Acevedo.

90.     Plaintiff **Ernesto Delgado-Crespo** was injured in the May 30, 1972 massacre at Lod Airport.  Ernesto brings this action individually, and as the representative of his late family members' estates.

91.     Plaintiff **Ernesto Delgado-Linares**, deceased, was the father of surviving injured Plaintiff Ernest Delgado-Crespo.  His estate is represented by his son Ernesto Delgado-Crespo.

92.     Plaintiff **Isabel Crespo-Ferrer**, deceased, was the mother of surviving injured Plaintiff Ernesto Delgado-Crespo. Her estate is represented by her son Ernesto Delgado-Crespo.

93.     Plaintiff **Nilsa I. Delgado-Crespo** is the sister of surviving injured Plaintiff Ernesto Delgado-Crespo.

94.     Plaintiff **Carlos J. Delgado-Crespo** is the brother of surviving injured Plaintiff Ernesto Delgado-Crespo.

95.     Plaintiffs **Manuel Gonzalez-Ruiz** and **Elba Delgado-Mora**, husband and wife, both now deceased, were each injured in the May 30, 1972 massacre at Lod Airport.

96.     Plaintiff **Minerva Gonzalez-Delgado** is the daughter of surviving injured Plaintiffs

Manuel Gonzalez-Ruiz and Elba Delgado-Mora.  Minerva brings this action individually, and as the representative of her late parents' estates.

97.     Plaintiff **Carmen N. Gonzalez-Delgado** is the daughter of surviving injured Plaintiffs Manuel Gonzalez-Ruiz and Elba Delgado-Mora.

98.     Plaintiff **Maritza Gonzalez-Delgado** is the daughter of surviving injured Plaintiffs Manuel Gonzalez-Ruiz and Elba Delgado-Mora.

99.     Plaintiff **Nazira E. Hawayek-Figueroa** is a United States citizen. She was injured in the May 30, 1972 massacre at Lod Airport.  Nazira brings this action individually, and as the representative of her late parents' estates.

100.    Plaintiff **Jose Assed-Hawayek**, deceased, was the father of surviving injured Plaintiff Nazira E. Hawayek-Figueroa. His estate is represented by his daughter, Nazira E. Hawayek-Figueroa.

101.    Plaintiff **Sylvia Figueroa-Rodriguez**, deceased, was the mother of surviving injured Plaintiff Nazira E. Hawayek-Figueroa.  Her estate is represented by her daughter, Nazira E. Hawayek-Figueroa.

102.    Plaintiff **Jose Y. Hawayek-Figueroa** is the brother of surviving injured Plaintiff Nazira E. Hawayek-Figueroa.

103.    Plaintiff **Pedro Hernandez-Rodriguez**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

104.    Plaintiff **Rosa M. Hernandez-Rios** is the daughter of surviving injured Plaintiff Pedro Hernandez-Rodriguez.  Rosa brings this action individually, and as the representative of her late father's estate.

105.    Plaintiff **Heriberto Hernandez-Rios** is the son of surviving injured Plaintiff Pedro Hernandez-Rodriguez.

106.    Plaintiff **Luz E. Lugos-Quinones**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

107.    Plaintiff **Rosa E. Vazquez-Lugo** was injured in the May 30, 1972 massacre at Lod Airport.  She brings this action individually, as the representative of her aunt Luz's estate, and as the representative of her other late family members' estates.

108.    Plaintiff **Abigail Lugo-Quinones**, deceased, was the sister of surviving injured Plaintiff Luz E. Lugo-Quinones.  Her estate is represented by her daughter Rosa E. Vazquez-Lopez.

109.    Plaintiff **Lydia Lugo-Quinones**, deceased, was the sister of surviving injured Plaintiff Luz E. Lugo-Quinones.  Her estate is represented by her niece Rosa E. Vazquez-Lopez.

110.    Plaintiff **William Lugo-Quinones**, deceased, was the brother of surviving injured Plaintiff Luz E. Lugos-Quinones. His estate is represented by his niece Rosa E. Vazquez-Lopez.

111.    Plaintiff **Neftali Lugo-Quinones**, deceased, was the brother of surviving injured Plaintiff Luz E. Lugos-Quinones. His estate is represented by his niece Rosa E. Vazquez-Lopez.

112.    Plaintiff **Eva C. Lugo-Quinones** is a United States citizen. She is the sister of surviving injured Plaintiff Luz E. Lugo-Quinones.

113.    Plaintiff **Luz B. Matos-Garcia**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

114.    Plaintiff **Carmen M. Matos-Garcia**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

115.    Plaintiff **Ana M. Sanchez-Matos** is the daughter of surviving injured Plaintiff Luz B. Matos-Garcia and the niece of surviving injured Plaintiff Carmen. M. Matos-Garcia.  Ana brings this action individually, and as the representative of her late family members' estates.

116.    Plaintiff **Carmen L. Sanchez-Matos**, deceased, was the daughter of surviving injured Plaintiff Luz B. Matos-Garcia.  Her estate is represented by her sister, Ana M. Sanchez-Matos.

117.    Plaintiff **Angel Rivera-Santiago** was injured in the May 30, 1972 massacre at Lod Airport.  He brings this action individually, and as the representative of his late family members' estates.

118.    Plaintiff **Angel L. Rivera-Cotto** is the son of surviving injured Plaintiff Angel Rivera-Santiago.

119.    Plaintiff **Juan C. Rivera-Cotto** is the son of surviving injured Plaintiff Angel Rivera-Santiago

120.    Plaintiff **Rosa A. Rivera-Cotto** is the daughter of surviving injured Plaintiff Angel Rivera-Santiago.

121.    Plaintiff **Hidelfonso Rivera-Santiago**, deceased, is the brother of surviving injured Plaintiff Angel Rivera-Santiago.  His estate is represented by his brother Angel Rivera-Santiago.

122.    Plaintiff **Tomas A. Rivera-Santiago**, deceased, is the brother of surviving injured Plaintiff Angel Rivera-Santiago. His estate is represented by his brother Angel Rivera-Santiago.

123.    Plaintiff **Juan Rivera-Santiago**, deceased, was the brother of surviving injured Plaintiff Angel Rivera-Santiago.

124.    Plaintiff **Marcial Rivera-Santiago**, deceased, was the brother of surviving injured

20

Plaintiff Angel Rivera-Santiago.  His estate is represented by his brother Angel Rivera-Santiago.

125.   Plaintiff **Carmen E. Rivera-Santiago** is the sister of surviving injured Plaintiff Angel Rivera-Santiago.

126.   Plaintiff **Hipolito Rivera-Santiago** is the brother of surviving injured Plaintiff Angel Rivera-Santiago.

127.   Plaintiff **Ana D. Rivera-Santiago** is the sister of surviving injured Plaintiff Angel Rivera-Santiago.

128.    Plaintiff **Catalina Rivera-Rivera** is the half-sister of surviving injured Plaintiff Angel Rivera-Santiago.

129.   Plaintiff **Claire Smith-Golden**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

130.   Plaintiff **Carol Golden** was injured in the May 30, 1972 massacre at Lod Airport. She is the daughter of surviving injured Plaintiff Claire Smith-Golden. Carol brings this action individually, and as the representative of her mother Claire's estate.

131.   Plaintiff **Ana Sara Vega-Gonzalez**, deceased, was injured in the May 30, 1972 massacre at Lod Airport.

132.   Plaintiffs **Jose Abner Munoz-Vega** and **Nilda Soler-Rivera**, husband and wife, were each injured in the May 30, 1972 massacre at Lod Airport.  Jose Abner Munoz-Vega brings this action individually, and as the representative of his late mother Ana Sara's estate.

133.   Plaintiff **Nilda I. Munoz-Soler** was injured in the May 30, 1972 massacre at Lod Airport. She is the daughter of surviving injured Plaintiffs Jose Abner Munoz-Vega and Nilda Soler-Rivera.

## IV.   DEFENDANT

134.   Defendant North Korea is a foreign state designated "state sponsor of terrorism" within the meaning of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) and the Foreign Assistance Act of 1961 (22 U.S.C. § 2371(b)) as the term "state sponsors of terrorism" is defined under 28 U.S.C. § 1605(A). North Korea was first designated a state sponsor of terrorism by the State Department in 1988.  See Notice, *Determination Pursuant to Section 6(j) of the Export Administration Act of 1979; North Korea*, 53 Fed. Reg. 3477-01 (Feb. 5, 1988).  The Secretary of State made that determination due to North Korea's repeated support for acts of international terrorism, including the Lod Airport massacre. The State Department rescinded that determination in 2008.  The State Department re-designated North Korea as a state sponsor of terrorism in November 2017, and that designation has not been rescinded.  *See* Notice, *Democratic People's Republic of Korea (DPRK) Designation as a State Sponsor of Terrorism (SST)*, 82 Fed. Reg. 56100-01 (Nov. 27, 2017).   Therefore, North Korea either "remains so designated" or "was designated within the 6-month period before the claim is filed." 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

135.   Operating through its agencies, instrumentalities, officials, officers, agents and employees acting within the scope of their employment or duties, North Korea regularly provided material support and resources to international terrorist organizations, such as the Japanese Red Army, the Palestine Liberation Organization, and the Popular Front for the Liberation of Palestine, within the meaning of 28 U.S.C. § 1605(A) in the form of funding, direction, training, military intelligence, personnel, forged passports, personnel and diplomatic support, so that these terrorist agents of North Korea could carry out their sovereigns' policy of international terrorism, including the Lod Airport attack of May 30, 1972, which proximately caused the death and injuries of

plaintiffs, set out more fully below.

## V.   STATEMENT OF FACTS

### *North Korea Support and Sponsorship of the Attack*

136.   Since 1970, North Korean officers and instrumentalities have provided material aid to terrorist organizations including the JRA, the PLO and the PFLP to promote their agenda of worldwide terrorism.

137.   For the Lod Airport mission, Defendant North Korea chose the JRA to act as its attack "triggermen" and its agent.

138.   Defendant North Korea provided material support to the JRA, PLO, PFLP and other terrorist groups as it:

    a.   Provided weapons, logistic materials to terrorist groups, including the JRA, PLO and PFLP;

    b.   Provided fraudulent identification documents to terrorist groups including the JRA, PLO and PFLP;

    c.   Helped terrorists in obtaining legal passage and infiltration into Israel to commit a terrorist act on Lod Airport on May 30, 1972 and to other nations;

    d.   Permitted the propaganda activities of the terrorist organization around the world against U.S. citizens and others;

    e.   Allowed the JRA, PLO and PFLP to operate in accommodations in its territory and have safe haven there.

139.   To fund the conspiracy, Defendant North Korea violated United Nations Security Council Resolutions and international law by funding terrorism, through acts of murder,

kidnapping, arson, robbery, and extortion, and the dealings and sales of illegal controlled substances and listed chemicals; they falsified official North Korean and other national identification documents, they unlawfully procured, reproduced, and sold naturalization and citizenship papers, passports and visas, they obstructed United States federal and state criminal investigations; and committed financial institution and mail fraud in which the defendant received income directly or indirectly from this pattern of racketeering to fund terrorism worldwide, and to carry out terrorist attacks worldwide.

140.     Defendant North Korea provided refuge and safe haven to numerous terrorist groups including the PFLP, JRA and PLO which enabled them to establish logistical and political officers and training. Defendant North Korea allowed members of these terrorist organizations to travel freely between foreign countries by providing them with forged passports and travel documents.

141.     Defendant North Korea acting through its agents, officers, employees, agencies and instrumentalities, helped terrorist groups organize and carry out military training, stockpile weapons, and develop global banking and communications networks with funds obtained by Defendant North Korea from racketeering as that term is defined in the Federal Civil RICO laws.

142.     This terrorist group patronage by Defendant North Korea allowed these terrorists to launch terrorist attacks against Israel and America.

143.     Terrorist attacks carried out at the direction and under the sponsorship of North Korea started taking place as a result of the aiding and abetting of the JRA, PLO and PFLP and other terrorist groups.

144.     Founding leader of the JRA, Takeshi Okamoto, Kozo Okamoto's brother, along

with several other JRA terrorist leaders, took refuge in North Korea after the March 1970 hijacking of a Japan Airlines flight.  Following the 1970 hijacking, North Korea became a key operations center and international base for the JRA.

145.    Defendant North Korea trained members of the PFLP and other terrorist organizations in the 1960s and 1970s.

146.    In September 1970, Dr. George Habash, the leader of the PFLP, made a visit to North Korea where he procured both weapons and funding.

147.    In an early May 1972 meeting, George Habash and Wadih Haddad, another head of the PFLP, hosted a gathering of all the major international terrorist groups at the PFLP controlled Baddawi refugee camp outside Tripoli, Lebanon. Using forged passports, the delegates were smuggled into and out of Lebanon.

148.    At this meeting, the attendees, despite their ideological differences, pledged to not only assist one another logistically, but to actively participate in and carry out terrorist attacks on behalf of one another in order to further their common political interests.

149.    As a result of this meeting, the PLO, PFLP, and JRA, in partnership with Defendant North Korea, and as agents and recipients of material aid and support from North Korea, agreed to begin a wave a terror, which commenced with the Lod Airport terrorist attack just two weeks later.

150.    At the time, these groups were only able to travel to and from the meeting and carry out its plans for terrorist attacks with the material support provided to them by Defendant North Korea and their officers, employees, agents, agencies and instrumentalities.

151.    On or about May 16, 1972, defendant selected three JRA Japanese terrorists to carry

out the Lod Airport attack: Kozo Okamoto, Tsuyoshi Okudaira, and Yasuyuki Yasuda. The three JRA terrorists were selected because they would not arouse suspicions of Israeli security, who were on the lookout for Middle Eastern terrorists. Okamoto, Okudaira and Yasuda were given specific instructions about the logistics of the attacks. They were then provided plane tickets, money, clothing, forged travel documents and weapons pre-packed in three suitcases, a travel route, and hotel accommodations in Rome, Italy to facilitate their circuitous travel from Lebanon to Tel Aviv for the actual attack. All of this support was provided by Defendant North Korea officers, agencies, employees and instrumentalities, acting within the scope of their office, employment, or agency on behalf of their sovereigns.

### The Lod Airport Massacre

152.    On May 30, 1972, all decedent-plaintiffs and surviving injured plaintiffs, save for Claire Smith-Golden and Carol Golden, traveled together from Puerto Rico on a religious pilgrimage to Israel.  Religious leader Reverend Jose M. Vega-Franqui of Hatillo, Puerto Rico, and tour director Jose Abner Munoz-Vega of Arecibo, Puerto Rico, together arranged a trip for sixty-eight religious pilgrims as a once in a lifetime visit to the Holy Land. The pilgrimage group was comprised of teachers, students, husbands and wives, children, coworkers, family members and friends.

153.    The decedent-plaintiffs and surviving injured plaintiffs, save for Claire Smith-Golden and Carol Golden, arrived to Lod Airport aboard Air France Flight 132.  Claire Smith-Golden waited inside the terminal at Lod Airport for her daughter Carol Golden to arrive aboard El Al Flight 438 from Paris.

154.    En Route to Tel Aviv, Air France Flight 132 made a forty minute stopover in Rome,

26

Italy. Twelve people boarded Flight 132 in Rome, including three JRA terrorists dressed inconspicuously in business suits.

155.     At approximately 10:00 p.m., the three JRA terrorists arrived at Lod Airport on Air France Flight 132, aboard the same flight as many as their victims.

156.     The three JRA terrorists waited with the other airline passengers for their luggage to arrive in the baggage claim area. After retrieving what appeared to be violin cases, the three JRA terrorists removed Czech-made VZT-58 and M-43 automatic rifles, and approximately half a dozen powerful shrapnel grenades.

157.     The JRA terrorists spread out in the baggage claim area with their weapons, and without warning, fired off the machine guns and threw shrapnel grenades into the crowd, providing no means of escape for the decedent-plaintiffs and the surviving injured plaintiffs.

158.     The JRA terrorists fired one hundred thirty-three bullets into the airport passengers. Within a minute, blood, baggage, and bodies littered the hall.

159.     In the brutal attack, the decedent-plaintiffs and the surviving injured plaintiffs witnessed their family, friends and fellow religious pilgrims being murdered, disfigured, suffering, bleeding, and dying.

160.     In all, twenty-six people died and eighty were seriously wounded in the massacre. Seventeen of the murder victims were Puerto Rican religious pilgrims.

161.     Two of the three terrorists also died in the attack. The third, Kozo Okamoto, was uninjured and was arrested.

*The Aftermath*

162.    In the chaos of the attack and the aftermath, family members, friends and pilgrimage tour group members became separated.  Many did not know the status of their loved ones, friends and fellow religious pilgrims for several hours or days.

163.    The lists of the names of the killed and wounded released soon after the attack misidentified some of the victims, leaving some family members thinking that a loved one still alive had been killed, while others were made to believe that a loved one that had been killed was still alive.

164.    When the bodies of the murdered Puerto Rican religious pilgrims arrived home to Puerto Rico from Israel aboard a special United States Air Force transport plane on June 5, 1972, a large crowd had gathered at the airport to receive and mourn the victims.  A cordon of police and young cadets had to contain the distraught crowd.

165.    Though 50 years have passed since the date of the massacre, the surviving victims, and the loved ones of those killed and injured in the massacre, never recovered from the devastation of the attack.  The emotional wounds for the victims remain raw.  The damage done to the victims and their loved ones had a catastrophic effect, which has carried through entire generations of family members.  The pain this event caused remains today, as if it just happened yesterday.

166.    Since 2006, Puerto Rico has observed Lod Airport Massacre Remembrance Day every May 30.

167.    During interrogations, captured terrorist Kozo Okamoto admitted that he and his fellow attackers were members of the JRA and that the attack had been carried out in conjunction

with the PFLP.

168.    The PFLP also publicly claimed responsibility for the attack, and this was widely reported in the international press.

169.    The lone surviving gunman, Kozo Okamoto, was tried in an Israeli military court and received a life sentence.  He was later released in 1985 as part of an agreement between the Israeli government and the PFLP.  Upon release, he first moved to Libya, then to Syria, and finally to Lebanon where he reunited with other members of the Japanese Red Army.

## VI. INDIVIDUAL ALLEGATIONS

170.    The decedent-plaintiffs murdered in the Lod Airport massacre, represented by their estates, include:  Carmen E. Crespo-Martinez, Virgen M. Flores-Suarez, Lina E. Gonzalez-Arias, Blanca R. Gonzalez-Hernandez, Eugenia Lopez-Hernandez, Miguel E. Martinez-Rivera, Vasthi Z. Morales-Rodriguez, Jose M. Otero-Adorno, Juan Padilla-Ortiz, Consorcia Rodriguez-Acosta, and Jose A. Rodriguez-Zeno.

171.    The plaintiffs who were injured in the Lod Airport massacre include the following individuals:  Maria del Carmen Diaz-Flores, Lydia I. Martinez-Villanueva, Reverend Jose M. Vega-Franqui, Mercedes Alejandro-Garcia, represented by the Estate of Mercedes Alejandro-Garcia, Luis Conde-Maldonaldo, represented by the Estate of Luis Conde-Maldonado, Juanita Lopez-Molleno, represented by the Estate of Juanita Lopez-Molleno, Juan Cruz-Candelaria, represented by the Estate of Juan Cruz-Candelaria, Antonia Acevedo-Vila, represented by the Estate of Antonia Acevedo-Vila, Ernesto Delgado-Crespo, Manual Gonzalez-Ruiz, represented by the Estate of Manual Gonzalez-Ruiz, Elba Delgado-Mora, represented by the Estate of Elba Delgado-Mora, Nazira E. Hawayek-Figueroa, Pedro Hernandez-Rodriguez, represented by the

Estate of Pedro Hernandez-Rodriguez, Luz E. Lugo-Quinones, represented by the Estate of Luz E. Lugo-Quinones, Rosa E. Vazquez-Lugo, Luz B. Matos-Garcia, represented by the Estate of Luz B. Matos-Garcia, Carmen M. Matos-Garcia, represented by the Estate of Carmen M. Matos-Garcia, Angel Rivera-Santiago, Claire Smith-Golden, represented by the Estate of Claire Smith-Golden, Carol Golden, Ana Sara Vega-Gonzalez, represented by the Estate of Ana Sara Vega-Gonzalez, Jose Abner Munoz-Vega, Nilda Soler-Rivera, and Nilda I. Munoz-Soler.

172.    The plaintiffs who are immediate relatives of decedent-plaintiffs murdered in the Lod Airport massacre, and/or surviving injured plaintiffs, include the following individuals: Marciano Crespo-Gonzalez, represented by the Estate of Marciano Crespo-Gonzalez, Carmen M. Martinez-Camacho, represented by the Estate of Carmen M. Martinez-Camacho, Miguel A. Crespo-Martinez, Jaime L. Crespo-Padilla, represented by the Estate of Jaime L. Crespo-Padilla, Rafael A. Crespo-Padilla,  Luis Flores-Velez, represented by the Estate of Luis Flores-Velez, Esther M. Suarez-Hernandez, represented by the Estate of Esther M. Suarez-Hernandez, Crucita Flores-Suarez, Lucina Flores-Suarez, Juan Flores-Suarez, represented by the Estate of Juan Flores-Suarez, Jose L. Flores-Suarez, Hermes Flores-Suarez, Maximino Diaz-Hernandez, Lourdes G. Diaz-Flores, Maximino Diaz-Flores, Melba A. Diaz-Flores, represented by the Estate of Melba A. Diaz-Flores, Ida E. Diaz-Flores, Michael Diaz-Flores, Maria A. Hernandez-Jimenez, represented by the Estate of Maria A. Hernandez-Jimenez, Nereida Gonzalez-Hernandez, Jose M. Gonzalez-Hernandez, Benjamin Gonzalez-Hernandez, represented by the Estate of Benjamin Gonzalez-Hernandez, Flor M. Gonzalez-Hernandez, represented by the Estate of Flor M. Gonzalez-Hernandez, Gustavo Gonzalez-Hernandez, represented by the Estate of Gustavo Gonzalez-Hernandez, Jaime Gonzalez-Hernandez, represented by the Estate of Jaime Gonzalez-Hernandez,

Luis M. Gonzalez-Hernandez, represented by the Estate of Luis M. Gonzalez-Hernandez, Noelia Gonzalez-Hernandez, represented by the Estate of Noelia Gonzalez-Hernandez, Samuel Gonzalez-Hernandez, represented by the Estate of Samuel Gonzalez-Hernandez, Hector V. Perez-Lopez, represented by the Estate of Hector V. Perez-Lopez, Ramon E. Martinez-Rosa, represented by the Estate of Ramon E. Martinez-Rosa, Damaris E. Vega-Morales, Vasthi N. Vega-Morales, Manuel Otero-Feliciano, represented by the Estate of Manuel Otero-Feliciano, Blanca I. Otero-Adorno, Francisco R. Otero-Adorno, Juan R. Otero-Adorno, Alicia Otero-Diaz, Luis A. Otero-Diaz, represented by the Estate of Luis A. Otero-Diaz, Petra Ortiz-Ocasio, represented by the Estate of Petra Ortiz-Ocasio, Pedro Padilla-Ortiz, represented by the Estate of Pedro Padilla-Ortiz, Victor Padilla-Ortiz, Elizabeth Padilla-Ortiz, Aida Padilla-Ortiz, Laura Padilla-Ortiz, Sarah Padilla-Ortiz, Zelideth Padilla-Ortiz, Nelson A. Padilla-Ortiz, Joaquin Negron-Rodriguez, represented by the Estate of Joaquin Negron-Rodriguez, Ismael Negron-Rodriguez, Ana Maria Negron-Rodriguez, Candida R. Negron-Rodriguez, Carmen A. Negron-Rodriguez, Felipe Negron-Rodriguez, Otilio Negron-Rodriguez, David Negron-Rodriguez, Rogelio Rodriguez-Roman, represented by the Estate of Rogelio Rodriguez-Zeno, Joaquina Zeno-Centeno, represented by the Estate of Joaquina Zeno-Centeno, Maria M. Rodriguez-Zeno, represented by the Estate of Maria M. Rodriguez-Zeno, Mercedes Rodriguez-Zeno, represented by the Estate of Mercedes Rodriguez-Zeno, Heriberto Rodriguez-Zeno, Narciso Tavales-Garcia, Matilda Tavales-Garcia, represented by the Estate of Matilda Tavales-Garcia, Edwin Tavales-Garcia, Eliezer Conde-Lopez, Carmen Acevedo-Vila, represented by the Estate of Carmen Acevedo-Vila, Antonio Cruz-Candelaria, represented by the Estate of Antonio-Cruz-Candelaria, Ernesto Delgado-Linares, represented by the Estate of Ernesto Delgado-Linares, Isabel Crespo-Ferrer, represented by the Estate of Isabel Crespo-Ferrer, Nilsa I.

Delgado-Crespo, Carlos J. Delgado-Crespo, Minerva Delgado-Crespo, Carmen N. Gonzalez-Delgado, Maritza Delgado-Crespo, Jose Assed-Hawayek, represented by the Estate of Jose Assed-Hawayek, Sylvia Figueroa-Rodriguez, represented by the Estate of Sylvia Figueroa-Rodriguez, Jose Y. Hawayek-Figueroa, Rosa M. Hernandez-Rios, Heriberto Hernandez-Rios, Abigail Lugo-Quinones, represented by the Estate of Abigail Lugo-Quinones, Lydia Lugo-Quinones, represented by the Estate of Lydia Lugo-Quinones, William Lugo-Quinones, represented by the Estate of William Lugo-Quinones, Neftali Lugo-Quinones, represented by the Estate Neftali Lugo-Quinones, Eva C. Lugo-Quinones, Ana M. Sanchez-Matos, Carmen L. Sanchez-Matos, represented by the Estate of Carmen L. Sanchez-Matos, Angel L. Rivera-Cotto, Juan C. Rivera-Cotto, Rosa A. Rivera-Cotto, Hidelfonso Rivera-Santiago, represented by the Estate of Hidelfonso Rivera-Santiago, Tomas A. Rivera-Santiago, represented by the Estate of Tomas A. Rivera-Santiago, Juan Rivera-Santiago, represented by the Estate of Juan Rivera-Santiago, Marcial Rivera-Santiago, represented by the Estate of Marcial Rivera-Santiago, Carmen E. Rivera-Santiago, Hipolito Rivera-Santiago, Ana D. Rivera-Santiago, and Catalina Rivera-Rivera.

173.    On May 30, 1972, members of the Japanese Red Army, with the material support of Defendant North Korea, by use of grenades and machine gun bullets, as described above, intentionally, willfully, violently and forcefully inflicted physical and/or mental injuries upon each and every one of the murdered and surviving injured plaintiffs, who at the time were all U.S. citizens, causing death or physical injury, pain and suffering, extreme mental anguish, and past and future economic loses, including medical expenses, lost income, and loss of earning capacity.

174.    The members of the Japanese Red Army, with the material support of Defendant North Korea, as alleged above, intentionally and willfully placed each and every one of the

murdered plaintiffs and the surviving injured plaintiffs in fear and imminent apprehension of harm as a direct result of their actions.

175.    Each and every one of the murdered and surviving injured plaintiffs endured extreme mental anguish and and/or death or physical pain and suffering, suffered emotional injury and loss, sustained economic losses, suffered the loss of the company of their family and friends, and were subjected to death or injury, pain, discomfort, and inconvenience and entitled to recover damages on the causes of action set forth herein.

176.    Each and every one of the plaintiffs who are immediate relatives of the murdered and surviving injured plaintiffs endured extreme mental anguish, pain and suffering, emotional injury and loss, and sustained economic losses, and are entitled to recover damages on the causes of action set forth herein.

177.    Specific allegations for each plaintiff are found below and are incorporated here by reference.

178.    **Carmen E. Crespo-Martinez** had just turned twenty-years-old when she traveled to Lod Airport for her religious pilgrimage. She was gathered together with her friends **Luz E. Lugo-Quinones** and **Nazira E. Hawayek-Figueroa** to have their picture taken, when the terrorists attacked.  The terrorists killed Carmen with machine gun fire and grenade blasts in the massacre.

179.    Carmen's parents, **Marciano Crespo-Gonzalez** and **Carmen E. Martinez-Camacho**, and her brothers, **Miguel A. Crespo-Martinez**, **Jaime L. Crespo-Padilla**, and **Rafael A. Crespo-Padilla**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of her torture and murder.

180.    **Virgen M. Flores-Suarez** was accompanying her niece, **Maria del Carmen Diaz-**

33

**Flores**, on their religious pilgrimage to Israel.  The terrorists murdered Virgen with machine gun blasts and grenade shrapnel in the massacre.

181.    Virgen's parents, **Luis Flores-Velez** and **Esther M. Suarez-Hernandez**, and her siblings, **Crucita Flores-Suarez, Lucina Flores-Suarez**, **Juan Flores-Suarez**, **Jose L. Flores-Suarez**, and **Hermes Flores-Suarez**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of her torture and murder.

182.    Fifteen year-old **Maria del Carmen Diaz-Flores**, escorted on the pilgrimage by her 21-year old aunt, **Virgen M. Flores-Suarez,** sustained serious injuries from grenade shrapnel in the attack, which required multiple surgeries and months of treatment both in Israel and in Puerto Rico.  She was left deeply scarred and permanently disabled.

183.    Maria del Carmen endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing her aunt, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.

184.    Maria del Carmen's father, **Maximino Diaz-Hernandez**, her mother, **Crucita Flores-Suarez**, and her siblings **Lourdes G. Diaz-Flores**, **Maximino Diaz-Flores**, **Melba A. Diaz-Flores**, **Ida E. Diaz-Flores** and **Michael Diaz-Flores**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of her injuries.

185.    The terrorists killed religious pilgrim **Lina E. Gonzalez-Arias** with machine gun fire and grenade blasts in the massacre.

186. The terrorists killed religious pilgrim **Blanca R. Gonzalez-Hernandez** with machine gun fire and grenade blasts in the massacre.

187. Blanca's mother, **Maria A. Hernandez-Jimenez**, and her siblings, **Nereida Gonzalez-Hernandez, Jose M. Gonzalez-Hernandez, Benjamin Gonzalez-Hernandez**, **Flor M. Gonzalez-Hernandez**, **Gustavo Gonzalez-Hernandez**, **Jaime Gonzalez-Hernandez**, **Luis M. Gonzalez-Hernandez**, **Noelia Gonzalez-Hernandez**, and **Samuel Gonzalez-Hernandez**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Blanca's torture and death.

188. The terrorists killed religious pilgrim **Eugenia Lopez-Hernandez** with machine gun fire and grenade blasts in the massacre.

189. Eugenia's son, **Hector V. Perez-Lopez**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Eugenia's torture and murder.

190. **Miguel E. Martinez-Rivera** and his wife **Lydia Martinez-Villanueva** were newlyweds at the time of the Lod Airport massacre. They were both teachers at Arecibo Vocational High School. Lydia was three months pregnant. When the terrorists opened fire, Miguel used his body as a shield to protect his pregnant wife from the bullets and grenade blasts, and was hit by a grenade and killed instantly. Lydia was seriously injured by grenade shrapnel. She required immediate surgery due to the injuries; however, due to her pregnancy, the hospital was unable to perform certain surgeries or x-rays for the extent of the shrapnel wounds. Lydia was hospitalized for several days immediately following the attack, and ultimately required several surgeries. Lydia suffered and continues to suffer daily discomfort and pain. Lydia's son was born

without knowing his father, and Lydia was forced to raise him alone.  Lydia developed depression as a result of the attack that required treatment. To this day, Lydia mourns her husband's sudden and violent death at the hands of terrorists.

191.    Lydia endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a direct result of being present at the massacre, and from witnessing her husband, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.

192.    Miguel's son, **Ramon E. Martinez-Rosa**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Miguel's torture and murder.

193.    Religious pilgrimage leader, Reverend **Jose M. Vega-Franqui** and his wife, **Vasthi Z. Morales-Rodriguez**, were standing across the baggage claim conveyor from the terrorists when the attack started.  Reverend Vega-Franqui and Vasthi were holding hands. Vasthi's grip tightened on Reverend Vega-Franqui's hand, and she exclaimed out loud, before the terrorists shot her in front of the Reverend.  Reverend Vega-Franqui was severely wounded by a gunshot wound to the chest.  Reverend Vega-Franqui did not receive confirmation that his wife died until three days after he was hospitalized.  Reverend Vega-Franqui developed intense tension, depression, nightmares and insomnia following the attack.  He was treated with psychotherapy and medications.  He continues to suffer from physical and psychiatric injuries as a result of the attack.

194.    Reverend Vega-Franqui endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing his wife, and his friends and fellow religious pilgrims

brutally tortured, murdered and injured in front of him.

195.    Reverend Vega-Franqui and Vasthi's daughters, **Damaris E. Vega-Morales** and **Vasthi N. Vega-Morales**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Vasthi's torture and murder, and Reverend Vega-Franqui's injuries.

196.    **Jose M. Otero-Adorno** was a history and sociology teacher at Guaynabo High School. He was also studying at the University of Puerto Rico.  He arrived to Lod Airport interested in visiting the holy sites of Jerusalem and reenacting Jesus' steps.  The terrorists killed him with machine gun fire and grenade shrapnel in the massacre.

197.    Jose's father, **Manuel Otero-Feliciano**, and his siblings, **Francisco R. Otero-Adorno**, **Blanca I. Otero-Adorno, Juan R. Otero-Adorno**, **Alicia Otero-Diaz** and **Luis A. Otero-Diaz**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Jose's torture and murder.

198.    The terrorists killed thirty-year old religious pilgrim **Juan Padilla-Ortiz** with grenade shrapnel and machine gun bullets in the massacre.

199.    Juan's mother, **Petra Ortiz-Ocasio**, and his siblings, **Pedro Padilla-Ortiz**, **Victor Padilla-Ortiz**, **Elizabeth Padilla-Ortiz**, **Aida Padilla-Ortiz**, **Laura Padilla-Ortiz**, **Sarah Padilla-Ortiz**, **Zelideth Padilla-Ortiz**, and **Nelson A. Padilla-Ortiz**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Juan's torture and murder.

200.    The terrorists killed religious pilgrim **Consorcia Rodriguez-Acosta** with grenade shrapnel and machine gun bullets in the massacre.

201. Consorcia's children, **Joaquin Negron-Rodriguez**, **Ana Maria Negron-Rodriguez**, **Candida R. Negron-Rodriguez**, **Ismael Negron-Rodriguez**, **Carmen A. Negron-Rodriguez**, **Felipe Negron-Rodriguez**, **Otilio Negron-Rodriguez**, and **David Negron-Rodriguez** endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Consorcia's torture and murder.

202. The terrorists killed religious pilgrim **Jose Rodriguez-Zeno** with machine gunfire and grenade shrapnel in the massacre.

203. Jose's parents, **Rogelio Rodriguez-Roman** and **Joaquina Zeno-Centeno**, and his siblings, **Maria M. Rodriguez-Zeno**, **Mercedes Rodriguez-Zeno** and **Heriberto Rodriguez-Zeno**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of his torture and murder.

204. The terrorists struck religious pilgrim **Mercedes Alejandro-Garcia** with a machine gun bullet that tore through her right leg. She underwent immediate surgery in Tel Aviv and remained hospitalized there for 45 days. She was hospitalized for several months immediately upon return to Puerto Rico. Mercedes suffered from chronic complications and experienced multiple hospital admissions over the years due to her injuries. Since 1972 she needed to use a special shoe with bilateral metal bars running from ankle to knee in order to support her right lower leg. She suffered from daily pain for the rest of her life. Her right leg was permanently deformed and her quality of life forever destroyed.

205. Mercedes endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing her friends and fellow religious pilgrims brutally tortured,

murdered and injured in front of her.

206.   Mercedes' children, **Matilda Tavales-Garcia**, **Narciso Tavales-Garcia**, and **Edwin Tavales-Garcia**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Mercedes' injuries.

207.   **Luis Conde-Maldonado** and his wife **Juanita Lopez-Molleno** traveled together with their congregation on their religious pilgrimage.  The terrorists struck Luis and Juanita with machine gun bullets and grenade shrapnel.  Luis sustained injuries that required six days of hospitalization, and despite treatment, shrapnel remained forever lodged in his body. The permanently remaining shrapnel caused him lifelong pain and discomfort.

208.   Immediately after the attack, Juanita was rushed to a nearby hospital for surgery. She spent two weeks hospitalized in Tel Aviv and was only released upon her own request.  Juanita then continued hospital treatment upon her return to Puerto Rico.

209.   Luis endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing his wife, and his friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him.  Luis further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Juanita's injuries.

210.   Juanita endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a direct result of being present at the massacre and witnessing her husband, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Juanita further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Luis' injuries.

211.    Luis and Juanita's son, **Eliezer Conde-Lopez**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of their parents' injuries.

212.    **Juan Cruz-Candelaria** traveled together with his wife **Antonia Acevedo-Vila** on their religious pilgrimage.  The terrorists struck Juan and Antonia with machine gun bullets and grenade shrapnel.  Both Juan and Antonia were immediately hospitalized in Tel Aviv and remained hospitalized for over a month.  The shrapnel embedded in Juan's hand made his hand virtually useless as he could no longer close his fingers.  The bullet wound through his armpit damaged the nerves to his arm. Juan was unable to return to work after the attack as a result of his physical and emotional injuries. Small pieces of grenade shrapnel remaining in both his legs caused him lifelong pain and problems walking.  Antonia required a cast for her right arm for a month. It took a year for Antonia to get the use of her arm back.  Antonia had a permanently disfigured-looking arm as a result of the attack.

213.    Juan endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing his wife, and his friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him. Juan further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Antonia's injuries.

214.    Antonia endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing her husband, friends, and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Antonia further endured extreme mental pain,

suffering and anguish, and sustained emotional injury and loss as a result of Juan's injuries.

215.     Antonia's sister, **Carmen Acevedo-Vila**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Antonia's injuries.

216.     Juan's brother, **Antonio Cruz-Candelaria**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Juan's injuries.

217.     **Ernesto Delgado-Crespo** was just seventeen years old when he arrived to Lod Airport with his fellow religious pilgrims.  The terrorists shot Ernesto multiple times in his face, chest, stomach and left thigh. He was immediately hospitalized in Tel Aviv after the attack. Ernesto had to undergo multiple invasive and painful surgeries simultaneously to have any chance of survival.  Ernesto endured a long, painful series of medical treatments and reconstructive surgeries to attempt to repair the severe damage to his face and body caused by the serious injuries he suffered in the Lod Airport massacre.  Despite intense medical treatments, Ernesto has never fully recovered from the disabling and disfiguring injuries inflicted upon him in the Lod Airport massacre.

218.     Ernesto endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing his friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him.

219.     Ernesto's parents, **Ernesto Delgado-Linares** and **Isabel Crespo-Ferrer**, and his siblings, **Nilsa I. Delgado-Crespo** and **Carlos J. Delgado-Crespo**, endured severe emotional

distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Ernesto's injuries.

220.   **Manuel Gonzalez-Ruiz** and his wife **Elba Delgado-Mora** traveled together on their religious pilgrimage.  The terrorists attacked Manuel with machine gun bullets.  Immediately after the attack he was rushed to a hospital in Tel Aviv where he underwent emergency surgery. He had a lengthy hospital stay in Tel Aviv, and during his hospitalization, suffered two separate pulmonary embolisms.  One he returned to Puerto Rico, he suffered yet another pulmonary embolism which required further hospitalization.

221.   Manual endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing his wife, and his friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him.  Manual further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Elba's injuries.

222.   Elba endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre and witnessing her husband, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Elba further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Manuel's injuries.

223.   Manuel and Elba's daughters, **Minerva Gonzalez-Delgado**, **Carmen N. Gonzalez-Delgado**, and **Maritza Gonzalez-Delgado**, suffered severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of their parents' injuries.

42

224.     Twenty-two year old religious pilgrim **Nazira E. Hawayek-Figueroa** stood together for a group photo with her friends, **Luz E. Lugo-Quinones** and **Carmen E. Crespo-Martinez**, when the terrorists attacked.  The terrorists shot Nazira in her left foot.  Immediately after the attack, she was rushed to a nearby hospital in Tel Aviv to undergo emergency surgery, and a cast was placed on her left foot. She spent two weeks hospitalized in Tel Aviv.  She was wheelchair bound due to complications from her injuries for four months.  Shrapnel remains permanently lodged in her body.  Nazira experiences chronic pain and complications from the original injuries, and the shrapnel remaining in both of her feet.

225.     Nazira endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing her friends and congregation members brutally tortured, murdered and injured in front of her.

226.     Nazira's parents, **Jose Assed-Hawayek** and **Sylvia Figueroa-Rodriguez**, and her brother, **Jose Y. Hawayek-Figueroa**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Nazira's injuries.

227.     **Pedro Hernandez-Rodriguez** was heading from the baggage area to the immigration area to take photos when the attack started.  He was struck with machine bullets and grenade shrapnel.  After the attack, Pedro was immediately rushed to a nearby hospital in Tel Aviv. He remained hospitalized there for a week.  He underwent years of extensive treatment for his injuries.  The treatments were unsuccessful and he suffered throughout his lifetime with numerous permanent disabling injuries.  In addition to the permanent disabling injuries, Pedro suffered from depression after the attack, with feelings of sadness and hopelessness.

228.    Pedro endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing his friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him.

229.    Pedro's children, **Heriberto Hernandez-Rios** and **Rosa M. Hernandez-Rios**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Pedro's injuries.

230.    **Luz E. Lugo-Quinones** was accompanying her nineteen-year-old niece **Rosa E. Vazquez-Lugo** on their religious pilgrimage.  When the attack started, Rosa stood nearby while Luz was taking a group photo with **Nazira Hawayek-Figueroa** and **Carmen E. Crespo Martinez**.  A grenade blast blew off Luz's left foot that hit her niece Rosa in the left shoulder. Shrapnel from the exploding grenade penetrated her legs and her lower left leg was completely crushed.  After the attack, she was rushed to a hospital in Tel Aviv where her left leg was amputated below the knee and surgeons removed shrapnel from her right hip and right heel.  Luz remained hospitalized in Tel Aviv for two months.  She had to undergo multiple surgeries on her left leg to remove grenade shrapnel.  Despite the surgeries, shrapnel remained permanently lodged in her body.  She remained wheelchair bound the rest of her life.  After the attack, Luz suffered chronic pain, permanent ringing in her ears, and from digestive problems.  She also suffered a lifetime of chronic clinical depression as a result of the attack.

231.    Luz endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing her niece, and her friends and fellow religious pilgrims brutally tortured,

murdered and injured in front of her.

232.     Luz's siblings, **Abigail Lugo-Quinones**, **Lydia Lugo-Quinones**, **William Lugo-Quinones**, **Neftali Lugo-Quinones**, and **Eva C. Lugo-Quinones**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Luz's injuries.

233.     **Rosa E. Vazquez-Lopez** cried out when her aunt Luz's leg landed on her shoulder. The terrorists struck Rosa with a bullet that penetrated her foot. After the attack, she was rushed to a nearby hospital in Tel Aviv. She needed an immediate blood transfusion.  She spent 13 days in quarantine in order to treat her wounds. She needed a cast and crutches for months and remained in tremendous agony during that time.

234.     Rosa endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and from witnessing her aunt, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.

235.     Rosa's mother, **Abigail Lugo-Quinones**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Rosa's injuries.

236.     Sisters **Luz B. Matos-Garcia** and **Carmen M. Matos-Garcia** traveled together for their religious pilgrimage to Israel.  Luz suffered severe lacerations from multiple shards of grenade shrapnel.  After the attack, she was immediately admitted to a hospital for treatment. Despite treatment in Tel Aviv and in Puerto Rico, shrapnel remained permanently lodged in her body.

237.    Luz endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing her sister, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Luz further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Carmen's injuries.

238.    The terrorists struck Carmen with a machine gun bullet to her hand and she suffered multiple lacerations from grenade shrapnel.  After the attack she underwent emergency surgery at a hospital in Tel Aviv.  She was hospitalized for four days and then transferred to a nearby hotel for outpatient treatment. Upon return to Puerto Rico she required multiple surgeries to her hand and for grenade shrapnel removal.  Carmen experienced permanent disability in her left hand the rest of her life.  As a result of the shrapnel wounds, she had permanent scarring on her head, left shoulder and right thigh.

239.    Carmen endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing her sister, and her friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Carmen further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of Luz's injuries.

240.    Luz's daughters **Ana M. Sanchez-Matos** and **Carmen L. Sanchez-Matos** endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Luz's injuries.

241.    The terrorists attacked religious pilgrim **Angel Rivera-Santiago** with machine gun bullets and grenade shrapnel.  After the attack he was rushed to a hospital in Tel Aviv for removal

of the grenade shrapnel and for treatment of his wounds.  He remained hospitalized in Tel Aviv for three months. While hospitalized, Angel developed severe pulmonary complications.  Angel has required multiple hospitalizations over the years to treat the severe complications from his wounds. Since the attack Angel has suffered serious consequences from his injuries including progressive respiratory problems, chronic anxiety, sleep disorders, back problems, permanent crippling injury of his left knee, and permanent injuries to his internal organs.  His quality of life was forever destroyed in the massacre.

242.    Angel endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre and witnessing his friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him.

243.    Angel's children, **Angel L. Rivera-Cotto**, **Juan C. Rivera-Cotto**, and **Rosa A. Rivera-Cotto**, and his siblings, **Hidelfonso Rivera-Santiago**, **Tomas A. Rivera-Santiago**, **Juan Rivera-Santiago**, **Marcial Rivera-Santiago**, **Carmen E. Rivera-Santiago**, **Hipolito Rivera-Santiago**, **Ana D. Rivera-Santiago**, and **Catalina Rivera-Rivera**, endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a result of Angel's injuries.

244.    **Claire Smith-Golden** was standing at the glass partition separating the public from the baggage claim and passport control areas of Lod Airport, waiting for her daughter **Carol Golden** to disembark from El Al Flight 438 arriving from Paris, when the terrorists attacked.  The terrorists struck Claire with machine gun bullets.  She was rushed to a Tel Aviv hospital immediately after the attack, where she underwent surgery for her wounds.  She remained

hospitalized in Tel Aviv for fourteen days.  Claire spent some time wheelchair bound, eventually graduated from the wheelchair to crutches, and later was able to walk with a cane.  Her right leg bore a deep scar from her injuries the rest of her life. She suffered permanent disability and pain.

245.    Claire endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a direct result of being present at the Lod Airport massacre. Claire further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of her daughter Carol's injuries.

246.    **Carol Golden** had just disembarked from El Al Flight 438 into Lod Airport and was waiting in line for passport control when she saw flashing lights coming from the baggage claim area and then heard explosions.  Someone pushed her to the ground and she crawled to a restroom nearby and hid in the stall until the noises stopped.  When she went back out she witnessed dead bodies lying near the baggage claim and blood, shoes and bloody bouquets of flowers strewn about.  Carol went into shock.  She then found out her mother had been shot and taken to a nearby hospital.  She did not know her mother's location until dawn the next morning.

247.    Carol endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss, as a direct result of being present at the Lod Airport massacre. Carol further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of her mother Claire's injuries.

248.    Tour director **Jose Abner Munoz-Vega** traveled with his mother, **Ana Sara Vega-Gonzalez**, his pregnant wife **Nilda Soler-Rivera,** and their daughter **Nilda I. Munoz-Soler** on the religious pilgrimage.  **Ana Sara Vega-Gonzalez** was grazed with a bullet and struck with grenade shrapnel.  She was rushed to a hospital immediately after the attack for treatment of her injuries.

48

She sustained permanent scars from her injuries.  She suffered from panic attacks, anxiety and nightmares after the attack.

249.    Ana Sara endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing her family, friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Ana Sara further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of her son Jose Abner's injuries.

250.    Five-month pregnant **Nilda Soler-Rivera** threw herself on top of her two-year-old daughter **Nilda I. Munoz-Soler** in order to protect her.  She was struck with grenade shrapnel from a nearby exploding grenade. A man threw himself on top of Nilda Soler-Rivera and her daughter to further protect them.  The terrorists shot Nilda Soler-Rivera and her protector with machine gun bullets.  The man was struck dead.  After the attack Nilda Soler-Rivera and Nilda I. Munoz-Soler were rushed to a hospital in Tel Aviv where Nilda Soler-Rivera underwent surgery for her injuries.  Nilda I. Munoz-Soler was separated from her mother during their hospitalization in order to be treated for injuries when she fell during the attack. Nilda Soler-Rivera has grenade shrapnel remaining in her body that causes her pain to this day.

251.    Nilda Soler-Rivera endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing her family, friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Nilda Soler-Rivera further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of her husband Jose Abner's injuries and her daughter Nilda I. Munoz-Soler's injuries.

49

252.    Nilda I. Munoz-Soler endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing her family, friends and fellow religious pilgrims brutally tortured, murdered and injured in front of her.  Nilda I. Munoz-Soler further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of her parents' injuries.

253.    **Jose Abner Munoz-Vega** was headed to the immigration counter when the attack started.  He threw himself to the floor and hid behind desks until the machine gun and grenade blasts stopped.  Once it was over he was in shock.  He thought he saw his mother being carried away on a stretcher.  Instead, it was his mother's cousin that had been killed in the attack.  He was reunited with his mother, wife and daughter, and witnessed them covered in blood and with injuries.  Jose Abner then searched for his tour group members and saw mangled bodies, and wounded and dead people everywhere.  Jose Abner remained in Tel Aviv for two months after the massacre in order to help in the aftermath.  He provided support to the injured in the various hospitals and helped local authorities identify the bodies of his loved ones, friends, and religious pilgrimage tour group members.

254.    Jose Abner endured severe emotional distress, shock, extreme mental anguish, pain and suffering, and sustained emotional injury and loss as a direct result of being present at the massacre, and witnessing his family, friends and fellow religious pilgrims brutally tortured, murdered and injured in front of him.  Jose Abner further endured extreme mental pain, suffering and anguish, and sustained emotional injury and loss as a result of his mother Ana Sara's injuries, his wife Nilda Soler-Rivera's injuries, and his daughter Nilda I. Munoz-Vega's injuries.

## COUNT I
## ACTION FOR EXTRAJUDICIAL KILLING
### (Under 28 U.S.C. § 1605A(c))

255.    Plaintiffs repeat, reallege and incorporate by references those facts and allegations set forth in all following paragraph as if fully set forth herein.

256.    Defendant North Korea caused the wrongful, willful, intentional, premeditated, deliberate, and malicious extrajudicial killing of decedent-plaintiffs in the Lod Airport massacre.

257.    Defendant North Korea, acting through agents JRA within the meaning of 28 U.S.C. §1605A(c), provided material support to the JRA. These acts caused the battery and wrongful death of the decedent-plaintiffs.

258.    Defendant North Korea is directly or vicariously liable for its actions because it controlled and/or acted in concert with the JRA in sponsoring its terrorist activities in the Lod Airport massacre, and in providing material support to the JRA for these activities.

259.    The Lod Airport massacre caused decedent-plaintiffs, their estates and their immediate family members severe injury including pain and suffering, pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish and loss of solatium.

## COUNT II
## BATTERY
### By Surviving Injured Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

260.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

261.    JRA with the material support of Defendant North Korea, willfully, intentionally,

violently and forcefully committed illegal acts during the Lod Airport massacre.

262.    These willful, wrongful and intentional acts constituted a violent battery upon the surviving injured plaintiffs and caused physical injury to them.

263.    As a direct and proximate result of the willful, wrongful and intentional acts of JRA, with the material support of Defendant North Korea, each and every one of the surviving injured plaintiffs was damaged in that they endured physical injury, pain and suffering, mental anguish, and past and future economic losses including medical expenses, lost income, and loss of earning capacity.

264.    Defendant's conduct in providing material support to JRA for Lod Airport Massacre was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

### COUNT III
### ASSAULT
### By Surviving Injured Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

265.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

266.    During the Lod Airport massacre, the JRA, with the material support of Defendant North Korea, intentionally and willfully acted to cause harm to the surviving injured plaintiffs, thereby putting them in fear for their lives and in imminent apprehension of harm and injury, or intended to put the surviving injured plaintiffs in imminent apprehension of such contact, as a direct result of the terrorists' actions.

52

267.    As a direct and proximate result of the willful, wrongful, and intentional act of JRA, with the material support of Defendant North Korea, each and every one of the surviving injured plaintiffs were injured in that they endured imminent apprehension of harm, extreme mental anguish, physical injury, pain and suffering, and past and future economic losses including medical expenses, lost income, and loss of earning capacity, all to their damage.

268.    Defendant North Korea's conduct in providing material support to JRA for the Lod Airport massacre was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Surviving Injured Plaintiffs
**(Under 28 U.S.C. § 1605A(c))**

269.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

270.    The actions of Defendant North Korea of providing material support to JRA, causing the Lod Airport massacre, constitutes extreme and outrageous conduct intended to cause the surviving injured plaintiffs severe emotional distress.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AND LOSS OF SOLATIUM
### By Immediate Family Members of Decedent-Plaintiffs Killed
### at Lod Airport and Surviving Injured Plaintiffs
**(Under 28 U.S.C. § 1605A(c))**

271.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations

set forth in all the foregoing paragraphs as if fully set forth herein.

272.   The actions of Defendant North Korea of providing material support to JRA, causing the Lod Airport massacre, constitutes extreme and outrageous conduct intended to cause severe emotional distress to the plaintiffs who are immediate family members of the U.S. citizens that were traveling through the Lod Airport.

273.   The actions by Defendant North Korea were undertaken deliberately, intentionally, willfully, maliciously, wantonly, and recklessly, with knowledge that the Lod Airport massacre would cause severe emotional distress to the immediate family members of the U.S. citizens who were killed or injured in the Lod Airport massacre.

274.   The plaintiffs who are immediate family members of decedent-plaintiffs and surviving injured plaintiffs, were aware that the Lod Airport massacre had taken place, knew that their loved ones were present at the Lod Airport, feared that their loved ones were killed or injured, and ultimately learned that their loved ones were either killed, or survived but were injured in the attack.

275.   The actions of Defendant North Korea did in fact cause the machine gun and grenade terrorist attack and subsequently was the cause in fact of the plaintiffs' severe emotional distress.  As a direct consequence of the actions of Defendant North Korea, the plaintiffs who are immediate family members of decedent-plaintiffs and surviving injured plaintiffs, have suffered severe emotional distress, shock, extreme mental anguish, pain and suffering, loss of solatium, loss of society and companionship.

276.   Defendant North Korea, by engaging in this intentional, extreme, outrageous, reckless and unlawful conduct, intentionally and recklessly inflicted severe emotional distress

upon plaintiffs.

277.    Defendant's conduct in providing material support to JRA for the Lod Airport massacre was outrageous, criminal, malicious, willful, and wanton in its reckless indifference to human life and the rights of others, a threat to public safety and international peace and security, and in violation of fundamental norms of international law, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

### COUNT VI
### PUNITIVE DAMAGES
#### by All Plaintiffs
#### (Under 28 U.S.C. § 1605A(c))

278.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

279.    Defendant North Korea's conduct was outrageous in the extreme; wanton, willful and malicious and constituted a threat to the public at large, warranting an award of punitive damages in an amount sufficient to punish Defendant North Korea and deter it and others from similar future wrongful conduct, pursuant to 28 U.S.C. § 1605A(c).

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court grant judgment in their favor against Defendant North Korea and grant plaintiffs:

A.  Compensatory damages in the amount of no less than FOUR BILLION DOLLARS ($4,000,000,000);

B.  Punitive damages in favor of plaintiffs against Defendant North Korea as provided by 28 U.S.C. § 1605A(c);

C.  Pre-judgment interest;

D.  Post-judgment interest;

E.  Reasonable costs and expenses;

F.  Reasonable attorney's fees; and

G.  Such other and further relief as the Court may determine to be just and equitable in the circumstances, including but not limited to leave of court to amend this Complaint as the interest of justice requires.


Respectfully submitted, this Memorial Day, the 50th anniversary of the Lod Airport massacre.


Date: May 30, 2022

_____ /s/ Joshua M. Ambush_
Joshua M. Ambush
Bar No. MD 27025
Law Offices of Joshua M. Ambush, LLC
106 Old Court Road, Suite 303
Baltimore, Maryland 21208
Phone: (410) 484-2070
Facsimile: (410) 484-9330
joshua@ambushlaw.com