**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ESTATE OF CARMEN E. CRESPO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEMOCRATIC PEOPLE'S REPUBLIC OF KOREA,<br><br>Defendant. | Civil Action No. 22-1514 (CKK) |

**MEMORANDUM OPINION**
(July 22, 2026)

The Plaintiffs in this action allege that the Democratic People's Republic of Korea ("DPRK" or "North Korea") is liable to them for its role in supporting the terrorist attack at Lod Airport on May 30, 1972.  The Plaintiffs caused service on the DPRK through diplomatic channels in February 2024, and the DPRK is in default.  The Plaintiffs now report that they are prepared to file their motion for default judgment as to liability.  Ahead of that submission, the Plaintiffs have filed a motion asking the Court to resolve several procedural matters. *See* Pls.' Mot., Dkt. No. 32. Upon consideration of the Plaintiffs' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** the Plaintiffs' [32] Motion.  The Court shall bifurcate liability and damages proceedings, allow the Plaintiffs to propose a Second Amended Complaint, allow the Plaintiffs to file their liability submissions in phases, and grant leave to file certain sensitive material under seal.  However, the Court will require the Plaintiffs to take additional steps to establish their authority to represent the estates of deceased claimants.

---

[1] The Court's consideration has focused on the Plaintiffs' Motion for Bifurcated Proceedings, Acceptance of Heir Declarations for Puerto Rico Estates, and Leave to File Evidence Under Seal ("Pls.' Mot"), Dkt. No. 32, and the Amended Complaint filed on September 23, 2025 ("Am. Compl."), Dkt. No. 31.

## I. BACKGROUND

The claims in this action arise from the terrorist attack at Lod Airport near Tel Aviv, Israel on May 30, 1972.  Am. Compl. ¶¶ 1, 6.  During this attack, three individuals attacked travelers with machine guns and grenades, killing 26 people and physically injuring 80 others.  *Id.* ¶ 1.

The named Plaintiffs in this case are U.S. citizens who were killed or physically injured during this attack, their immediate family members, and estates and representatives of named Plaintiffs who are deceased.  *Id.* ¶¶ 1, 6–179.  Most of the Plaintiffs who were present at the attack at Lod Airport were traveling to Israel from Puerto Rico as religious pilgrims.  *Id.* ¶ 6.  Another was a U.S. citizen working as a teacher in Israel at the time.  *Id.*

The Plaintiffs allege that a terrorist group known as the Japanese Red Army carried out the attack at Lod Airport with material support from the DPRK.  *Id.* ¶¶ 3, 180–207.  Based on this alleged material support, the Plaintiffs assert claims against the DPRK for extrajudicial killing, battery, assault, intentional infliction of emotional distress, and loss of solatium.  *Id.* ¶¶ 306–328.  They also seek punitive damages.  *Id.* ¶¶ 329–330.

Because many Plaintiffs were killed in the 1972 attack or have died in the intervening years, resolving this case will require consideration of multi-generational estate matters and issues of authority to bring suit on behalf of deceased victims.  *See id.*; Pls.' Mot. at 2–3.

## II. LEGAL STANDARD

This case arises under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, which affords the primary "'basis for obtaining jurisdiction over a foreign state' in United States courts" under a general federal or state cause of action.  *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 13 (D.C. Cir. 2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)).  Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355

(1993).   A federal district court therefore generally cannot exercise subject-matter jurisdiction unless one of the FSIA's enumerated exceptions applies.  *Id.   But cf. Exxon Mobil Corp. v. Corporacion Cimex, S. A. (Cuba)*, 146 S. Ct. 1909, 1919 (2026) (recognizing that certain types of claims not at issue here may proceed against a foreign sovereign without satisfying an FSIA exception).  Therefore, in most cases against foreign states, the applicability of an FSIA exception is a "threshold" jurisdictional issue, and a federal court "must satisfy itself" that an exception applies before allowing the action to proceed.  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983).

The Plaintiffs here rely on the FSIA's "terrorism exception."  This exception provides that federal courts may hold a state sponsor of terrorism to be liable for money damages for acts of torture and extrajudicial killing and the provision of "material support or resources" for such acts, provided that the claimants establish that their injuries were caused by the acts of "an official, employee, or agent" of the foreign state acting within the scope of the relevant office, employment, or agency relationship.   28 U.S.C. § 1605A(a); *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1045 (D.C. Cir. 2014).  This exception also requires that "(i) the foreign country was designated a 'state sponsor of terrorism at the time [of] the act,' (ii) the 'claimant or the victim was' a 'national of the United States' at that time, and (iii) the 'claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim.'" *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 14 (D.C. Cir. 2015) (quoting 28 U.S.C. § 1605A(a)(2)).  The exercise of jurisdiction under this provision is mandatory.

"[W]hen the defendant State fails to appear and the plaintiff seeks a default judgment, the FSIA leaves it to the court to determine precisely how much and what kinds of evidence the

3

plaintiff must provide, requiring only that it be 'satisfactory to the court.'" *Han Kim*, 774 F.3d at 1047 (quoting 28 U.S.C. § 1608(e)).

### III. ANALYSIS

**A.     The Court shall bifurcate proceedings on liability and damages into separate phases.**

To make the threshold showing that the DPRK is susceptible to suit in federal court under the FSIA's terrorism exception, the Plaintiffs must establish that "an official, employee, or agent" of the DPRK provided "material support or resources" for the acts of torture and extrajudicial killing giving rise to their claims.   28 U.S.C. § 1605A(a).   This threshold issue overlaps substantially with the ultimate issue of whether the DPRK is liable for the personal injuries and deaths at the center of this case.   This issue is also common to all Plaintiffs in this action.   Unlike damages calculations, it does not require individualized determination for each Plaintiff.

In the interest of efficiently resolving the threshold issues that are common to all parties, the Plaintiffs propose to bifurcate proceedings on liability and damages into separate phases.   Pls.' Mot. at 2–3.   In the first phase, the Court would adjudicate whether the DPRK provided material support to the perpetrators of the 1972 attack at Lod Airport.   *See id.*   In the second phase, the Court would adjudicate each individual Plaintiff's claim for damages, assessing their injuries, their losses, and—for estates—their authority to bring suit on behalf of deceased claimant.   *See id.*

Courts in this Circuit routinely bifurcate proceedings on liability and damages in cases involving the FSIA's terrorism exception.   *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 65 (D.D.C. 2003) (RCL) (entering judgment "as to all issues of liability" against sovereign defendant and ordering that "all claims of damages" be submitted to special masters); *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 60 (D.D.C. 2019) (CKK) (adjudicating sovereign defendant liable and concluding that "damages can be awarded," but concluding that

"determining the appropriate damages . . . will require further proceedings"); *Doe v. Democratic People's Republic of Korea Ministry of Foreign Affs. Jungsong-Dong*, 414 F. Supp. 3d 109, 129 (D.D.C. 2019) (DLF) (adjudicating sovereign defendant "liable to all plaintiffs," but deferring consideration of "the plaintiffs' damages" to "a subsequent opinion").

Consistent with this practice, the Court shall bifurcate proceedings in this action, with jurisdiction and liability to be determined first, followed by individualized damages proceedings.

**B.     To proceed on behalf of deceased claimants, the Plaintiffs must satisfy the requirements of D.C. law for foreign personal representatives.**

The Plaintiffs next seek leave to establish authority to litigate on behalf of deceased claimants whose estates reside in Puerto Rico by filing declarations under penalty of perjury to establish certain predicate facts that are relevant to litigation authority under Puerto Rico law. Pls.' Mot. at 4–6.[2]  The Plaintiffs' proposal relies on a principle of Puerto Rico estate law:  In Puerto Rico, an undivided estate is a compulsory community of property, and an individual heir may litigate on behalf of the estate without formal appointment as an executor or administrator and without the consent or joinder of other heirs. *See id.* (citing *Tropigas de P.R. v. Tribunal Superior*, 102 D.P.R. 630, 639–40, 2 P.R. Offic. Trans. 816, 826–28 (P.R. Oct. 14, 1974)).  However, because this Court must apply D.C. law to decide who may litigate on behalf of an estate, the Plaintiffs' proposed approach is not sufficient to establish their litigation authority in this case.

"Deceased persons are not proper parties" to a civil action in federal court. *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 333 (D.D.C. 2014) (RCL) (citing Fed. R. Civ. P. 25(a)(1)).  Similarly, an estate cannot be a "real party in interest" and cannot "sue in [its] own

---

[2] Specifically, the Plaintiffs propose to satisfy this requirements by filing declarations in which the proposed representative of each family group attest, under penalty of perjury, that (i) the declarant is an heir of the relevant decedent under Puerto Rico law; (ii) the declarant is pursuing the decedent's causes of action on behalf of the decedent's undivided estate, for the benefit of all heirs; and (iii) there is no known dispute among the heirs regarding representation of the estate in this litigation.  Pls.' Mot. at 4–6; see also Dkt. No. 32-1 (proposed declaration template).

name[] without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a)(1); *Est. of Scherban v. Suntrust Bank*, No. 15-cv-1966, 2016 WL 777913, at *1 (D.D.C. Feb. 26, 2016) (JEB). Accordingly, to present the claims of a decedent in an FSIA action, a representative of the decedent's estate who has authority to stand in the shoes of the decedent must appear in the decedent's place. *See* Fed. R. Civ. P. 17(a)(1).

The question of who may appear as a representative of an estate is controlled by the law of the state in which the district court is located. Fed. R. Civ. P. 17(b)(3); *Est. of Manook v. Rsch. Triangle Inst., Int'l & Unity Res. Grp., L.L.C.*, 693 F. Supp. 2d 4, 16 (D.D.C. 2010) (Shanstrom, J., sitting by designation). This representation issue is distinct from the issue of whether claims for injuries suffered during a decedent's lifetime survive that person's death and may be brought by the decedent's estate, which courts in this Circuit have consistently held is controlled by the law of the state whose law governs the estate's creation. *See, e.g.*, *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 12 (D.D.C. 2011) (RCL); *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 85 (D.D.C. 2017) (CRC); *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 36 (D.D.C. 2020) (RC).

Because this Court sits in the District of Columbia, it must apply D.C. law—not Puerto Rico law, as the Plaintiffs have proposed—to decide whether the Plaintiffs may represent decedents' estates and present claims on their behalf. *Cf.* Pls.' Mot. at 4–6 (citing decisions by the U.S. District Court for the District of Puerto Rico that correctly applied Puerto Rico law to resolve analogous questions presented in cases proceeding in that District).

Under D.C. law, "[a] foreign personal representative administering an estate which has property located in the District of Columbia shall file with the Register [of Wills] a copy of the appointment as personal representative and a copy of the decedent's will, if any," which must be

6

authenticated.  D.C. Code § 20-341(b); *see* 28 U.S.C. § 1738 (providing authentication procedure). Because a legal claim is a form of property, this filing requirement applies to personal representatives of estates seeking to bring lawsuits in this District.  *See Est. of Manook*, 693 F. Supp. 2d at 17; *Est. of Scherban v. Suntrust Bank*, No. 15-cv-1966, 2016 WL 777913, at *2 (D.D.C. Feb. 26, 2016) (JEB); *see also Patchak v. Jewell*, 828 F.3d 995, 1005 (D.C. Cir. 2016) (recognizing that "a cause of action is a species of property"), *aff'd sub nom. Patchak v. Zinke*, 583 U.S. 244 (2018).  "Upon filing a copy of the appointment as personal representative in another jurisdiction" with the Register of Wills, "'[a] foreign personal representative may exercise all the powers of such office and may sue and be sued in the District of Columbia, subject to any statute or rule relating to nonresidents,' in connection with the administration of the estate."  *In re Est. of Monge*, 841 A.2d 769, 774 (D.C. 2004) (alteration in original) (citing D.C. Code  § 20-341(b) and quoting D.C. Code § 20-342).  However, until these filing requirements are satisfied, a putative personal representative cannot bring suit on behalf of an estate in this District.  *See Est. of Manook*, 693 F. Supp. 2d at 17; *Est. of Scherban*, 2016 WL 777913, at *2.

 Judge Royce C. Lamberth's decision in *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68, 83 (D.D.C. 2010), on which the Plaintiffs rely, is not to the contrary.  In *Anderson*, Judge Lamberth concluded that an individual heir to a deceased claimant whose estate was governed by Puerto Rico law could bring an action based on the decedent's pain and suffering "on behalf of [the heir's] interest in that estate" because Puerto Rico law allows heirs to bring such claims.  *Id.* This conclusion resolved the survivability of the pain-and-suffering claim, but it did not address the distinct issue of the authority to litigate that claim on behalf of the estate in this District.  *See id.*  Because the parties in *Anderson* do not appear to have raised the litigation-authority issue and there is no direct indication of what Judge Lamberth concluded, if anything, about the basis for the

*Anderson* plaintiffs' authority to represent the Puerto Rico estate in litigation in this District, the *Anderson* decision does not support the Plaintiffs' position here. *See id.*; *see also Camara v. Mastro's Restaurants LLC*, 340 F. Supp. 3d 46, 54 (D.D.C. 2018) (JEB) (noting that when an issue is "not pressed by the parties or passed on by the Court," the resulting decision lacks precedential force on that issue), *aff'd,* 952 F.3d 372 (D.C. Cir. 2020).

In sum, because this Court is bound to apply "the law of the state where the court is located" to decide who may litigate in representative capacity, the Plaintiffs must satisfy D.C.'s filing requirements for foreign personal representatives before they may litigate on behalf of deceased claimants' estates in this District. Fed. R. Civ. P. 17(b)(3). Accordingly, the Plaintiffs' request for leave to establish litigation authority by submitting heir declarations in the form that they have proposed is **DENIED**. Instead, before the Plaintiffs may proceed as representatives of estates, the Plaintiffs must file the appropriate documents with the D.C. Register of Wills and amend their complaint with allegations sufficient to establish that all named Plaintiffs are proper representatives under D.C. law. *Accord Est. of Manook*, 693 F. Supp. 2d at 17 (allowing claimants an opportunity to cure a similar defect by filing appropriate documents with the Register of Wills); *Est. of Scherban*, 2016 WL 777913, at *2 (same).

### C.    The Plaintiffs may seek leave to file a Second Amended Complaint.

Next, the Plaintiffs propose to file a Second Amended Complaint "to ensure the operative pleading accurately identifies the designated heirs pursuing the decedent's causes of action on behalf of each estate, and to make minor adjustments to the plaintiff roster." Pls.' Mot. at 5. The Plaintiffs represent that these changes will not "alter the nature, scope, or legal theories of this action." *Id.*

Because more than 21 days have passed since the service of the Plaintiffs' initial pleading, the Plaintiffs may amend their complaint "only with the opposing party's written consent or the

8

court's leave." Fed. R. Civ. P. 15(a)(2).  The Court "should freely give leave when justice so requires."  *Id.*  Here, granting leave to amend will serve the ends of justice because doing so will allow the Plaintiffs a reasonable opportunity to establish their authority to litigate on behalf of estates under the governing standards.  *See supra* Section III.B.  Meanwhile, none of the factors that sometimes weigh against allowing an amendment are present here.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" may warrant denying leave to amend).  Most notably, a narrowly drawn amendment will not prejudice the Defendant, who has not appeared and will not be forced by such an amendment to defend any new types of claims.  Accordingly, the Court will grant a motion for leave to amend, provided that the proposed amendment does not significantly alter the nature, scope, or legal theories presented in this action.

The Plaintiffs propose to file this amendment without serving the amended pleading on the DPRK under 28 U.S.C. § 1608, which sets out the procedure for service on foreign states.  Pls.' Mot. at 5–6.  The details of service are important here for two reasons.  First, and most importantly, proper service under Section 1608 is the means of establishing personal jurisdiction over a foreign state, without which a claim against that state cannot proceed.  *See* 28 U.S.C. § 1330(b); Fed. R. Civ. P. 4(k)(2); *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005).  Second, and more practically, effectuating renewed service under Section 1608 in this case would likely require a second round of service through diplomatic channels, which often involves a lengthy delay and "places a significant burden on plaintiffs, the executive branch, and the Court." *Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 224–25 (D.D.C. 2005) (JDB).

Courts in this Circuit have often allowed plaintiffs in FSIA cases to amend their pleadings after successful initial service without repeating the onerous process of serving a foreign state defendant. *See, e.g.*, *Maalouf v. Islamic Republic of Iran*, 514 F. Supp. 3d 280, 286 (D.D.C. 2021) (JDB); *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 20 (D.D.C. 2009) (PLF); *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 46 (D.D.C. 2006) (RCL); *Dammarell*, 370 F. Supp. 2d at 224–25; *Hill v. Republic of Iraq*, 175 F. Supp. 2d 36, 38 n.2 (D.D.C. 2001) (TPJ), *rev'd on other grounds,* 328 F.3d 680 (D.C. Cir. 2003); *see also In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 105 (D.D.C. 2009) (RCL) (allowing plaintiffs to proceed with new claims under Section 1605A without renewed service of an amended complaint after the plaintiffs previously served related claims under another provision); *cf. Shoham v. Islamic Republic of Iran*, 922 F. Supp. 2d 44, 47–48 (D.D.C. 2013) (RCL) (declining to enter default judgment where the defendant had been served only in a prior, unrelated case). Courts following this practice have allowed a variety of amendments, including, in at least one case, amendments adding new plaintiffs with claims related to those asserted in the initial pleading. *See Hill*, 175 F. Supp. 2d at 38 n.2. Allowing amendments like these without renewed service is consistent with Federal Rule of Civil Procedure 5(a), which provides that "[n]o service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4." Fed. R. Civ. P. 5(a). This procedure is also consistent with the text of Section 1608, which appears to contemplate only service of the initial pleading. *See* 28 U.S.C. § 1608(a) (referring to delivery of "the summons and complaint" to the foreign defendant).

Accordingly, provided that the Plaintiffs' proposed amendments do not significantly alter the nature, scope, or legal theories of this action, the Court will allow the Plaintiffs to amend their

10

complaint without effecting renewed service of their amended complaint on the DPRK under Section 1608.

In sum, the Court shall allow the Plaintiffs to file a Second Amended Complaint to identify the personal representatives pursuing claims on behalf of deceased Plaintiffs and to add or remove Plaintiffs, provided that any such amendment does not significantly alter the nature, scope, or legal theories of this action. The Plaintiffs shall move for leave to file a Second Amended Complaint on or before **August 31, 2026**. If the Court grants leave to amend, it will not require renewed service of the Second Amended Complaint on the DPRK.

### D.     The Plaintiffs may file damages submissions in phases.

Next, the Plaintiffs seek leave to file damages submissions in phases and to seek partial final judgments for those Plaintiffs whose documentation is complete, without awaiting final submissions from all Plaintiffs. Pl.'s Mot. at 6–7. The Court will **GRANT** this request. Accordingly, if the Court finds that the DPRK is liable for the conduct that the Plaintiffs have alleged, the Court shall allow the Plaintiffs to file damages submissions in phases, beginning with family groups whose documentation is complete, while damages proceedings for family groups whose documentation is not yet complete shall be held in abeyance. If the Court determines that it has jurisdiction and that certain Plaintiffs are entitled to judgment and specified damages, the Court will entertain motions for entry of partial final judgments as to those Plaintiffs. *See* Fed. R. Civ. P. 54(b) (providing that a district court may enter a partial final judgment "if the court expressly determines that there is no just reason for delay"); *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (providing that courts "must take into account judicial administrative interests as well as the equities involved" when assessing whether to enter such a judgment); *see also Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 66–67 (D.D.C. 2018) (RDM) (finding

11

no just reason for delaying entry of partial final judgment in favor of FSIA plaintiffs proceeding under the Act's terrorism exception).

        **E.**        **The Plaintiffs may file certain sensitive information under seal.**

Finally, the Plaintiffs seeks leave to file under seal "certain sensitive personal information, including: home addresses, dates of birth, Social Security numbers, medical records, and other personally identifiable information." Pls.' Mot. at 7. The Plaintiffs explain that this information is "necessary to establish damages," but that it could "expose Plaintiffs to identity theft, harassment, or other harm" if disclosed. *Id.*

Given the "strong presumption in favor of public access to judicial proceedings," courts must weigh several factors before sealing judicial records. *United States v. Hubbard*, 650 F.2d 293, 314–24 (D.C. Cir. 1980). Among these factors are the strength of the public's interest in accessing the records at issue and the particularized privacy interests that would be impaired by public disclosure of those records. *See id.*

In this case, as in many similar cases, the Plaintiffs' privacy interests likely weigh in favor of allowing the sealing of the records at issue. *See, e.g.*, *Doe v. Syrian Arab Republic*, No. 18-cv-0066, 2020 WL 5422844, at *3 n.4 (D.D.C. Sept. 10, 2020) (KBJ). Indeed, under this Court's Local Rules, some of the personal information at issue cannot be filed on the public docket. *See* LCvR 5.4(f) (providing that Social Security numbers and dates of birth, among other identifiers, may not be filed except under seal). However, because the discretion to seal a judicial record is "to be exercised in light of the relevant facts and circumstances of the particular case," the Court shall resolve requests for leave to file under seal on a submission-by-submission basis. *See United States v. Brice*, 649 F.3d 793, 798 (D.C. Cir. 2011) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978)).

Accordingly, the Court shall entertain motions for leave to file under seal sensitive personal information including home addresses, dates of birth, Social Security numbers, and medical records. *See* LCvR 5.4(f); Order Establishing Procedures, Dkt. No. 4 at 2. Contemporaneously with the filing of any such motion, the Plaintiffs shall file publicly a redacted version of the document that is proposed to be sealed.

### IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT IN PART** and **DENY IN PART** the Plaintiffs' pending [32] Motion regarding procedural matters. The Court shall bifurcate liability and damages proceedings, allow the Plaintiffs to propose a Second Amended Complaint, allow the Plaintiffs to file their liability submissions in phases, and grant leave to file certain sensitive material under seal. However, the Court will require the Plaintiffs to take additional steps to establish their authority to represent the estates of deceased claimants under District of Columbia law, including filing appropriate documents with the D.C. Register of Wills.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** July 22, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge